2000 ME 12

**Stephen J. NICHOLSON**

v.

**Julie A. NICHOLSON.**

Supreme Judicial Court of Maine.

Submitted on Briefs Nov. 30, 1999.
Decided March 20, 2000.

Stephen J. Nicholson, "Amberley", Wroughton, Wiltshire, England, for plaintiff.

Julie A. Nicholson, Gorham, for defendant.

Andrew Ketterer, Attorney General, Ethna Mary Friedman, Asst. Attorney General, Augusta, for intervenor Dept. of Human Services.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, and ALEXANDER, JJ.

CLIFFORD, J.

[¶ 1] Stephen J. Nicholson appeals from orders of the Superior Court (Cumberland County, *Brennan J.*) ordering that Julie A. Nicholson, his former wife, pay him child support, and determining that Stephen is in arrears for child support to the Department of Human Services. Stephen contends that the court abused its discretion when it: (1) made the award of child support to be paid by Julie to him effective from the date of the hearing and not from the date of the original motion requesting modification of support; (2) refused to adjust the amount of that award upward from the child support guidelines to account for the higher cost of living in England; and (3) refused to award him costs. In addition, he contends that the Superior Court lacked jurisdiction over the issue of his child support arrearage, and that in any event, the court improperly determined the amount of the arrearage. Finding neither error nor any abuse of discretion, we affirm the judgment.

[¶ 2] In 1985, Stephen and Julie were divorced in a judgment issued by the Superior Court. The primary residence of their daughters, Ruth and Allyson, was determined to be with Julie, and Stephen was ordered to pay child support in the amount of $20.00 per child per week. Stephen, a citizen of Great Britain, had returned to England. Because Julie was receiving public assistance, the Department filed a petition pursuant to the Uniform Reciprocal Enforcement of Support Act, 19 M.R.S.A. §§ 331–420 (1981 & Supp.1988), with the appropriate English authorities to enforce the child support order. The Magistrates Court (England) responded on January 30, 1989 by issuing an order that Stephen pay £10.00 per child per week.

[¶ 3] Stephen lost his teaching job in 1994 and has not obtained employment in England since that time. In 1995, Stephen petitioned the Magistrates Court in England to reduce his support obligation to a nominal amount for Ruth and to eliminate his obligation for Allyson, who had since moved to England to live with him. The Magistrates Court ordered that Stephen pay nominal amounts for both Ruth and Allyson. Pursuant to Stephen's petition, the Magistrates Court also relieved him of arrearage under its prior order.

[¶ 4] At the same time, Stephen sought a modification of the Maine child support order in the Superior Court, asking that the primary residence of Allyson be with him. The Superior Court recognized that Allyson should reside with Stephen, but dismissed all other pending motions and did not rule on any change in child support.

[¶ 5] In 1997, English authorities forwarded to the Superior Court Stephen's petition for the Department to intervene and obtain child support for Allyson from Julie and to remit those funds to England. The Department accordingly moved to amend the Maine child support order. Julie responded to the Department's motion and asserted a right to setoff against any award of child support for Allyson the court might require of Julie to be applied to the arrearage owed by Stephen under the court's prior support orders. Stephen alleged that the Department had a conflict of interest, and the Department then petitioned to withdraw as Stephen's representative.

[¶ 6] In a common sense effort to save substantial time and expenses of travel in a case involving parties from Maine and from England, the Superior Court conducted a hearing by telephone. The court required the Department to participate. At the hearing, the Department asserted that the arrearage was owed to it because Julie had received public assistance during the period in question. Stephen testified, and Julie and the Department conceded, that he and Allyson had been receiving public assistance in England since July 1994. Evidence showed that Julie was now employed at Jackson Brook Institute and was able to support Allyson. The Department asserted that the arrearage was owed to it because Julie had received public assistance during the period in question. The court ordered that Julie pay support in the amount of $93.00 per week to Stephen on behalf of Allyson and reserved ruling on the issue of arrearage pending an accounting by the Department. The court, in its order dated January 30, 1998, made the support order effective December 12, 1997, the date of the hearing, declining to use July 7, 1997, the date the original petition was filed.

[¶ 7] Stephen and Julie both appealed, but we dismissed the appeals because the issue of the arrearage had not been decided. Stephen then moved to dismiss the Department's request for arrearage on the ground that the Department did not have standing. Based on the written submissions of the parties, the court concluded that Stephen owed the Department $7,662.61 in arrearages and denied Stephen's motion to dismiss. This appeal by Stephen followed.

## I. AWARD OF SUPPORT TO STEPHEN

[¶ 8] Stephen first contends that the Superior Court abused its discretion when, in its order requiring Julie to pay him child support, it based the award on the child support guidelines, *see* 19–A M.R.S.A. §§ 2001–2009 (1998), and improperly refused to consider the increased cost of living in England to which Stephen and Allyson were subject. Stephen also contends that the court acted outside of the bounds of its discretion (1) when it refused to order that those payments by Julie be made retroactive to the date the motion for such payments was filed, and (2) when it refused to award him costs.

[¶ 9] We review a child support award for an abuse of discretion. Such an order will be vacated only "if it results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument." *Harvey v. Robinson,* 665 A.2d 215, 217 (Me.1995). The support obligation derived from the guidelines is presumed to be the proper amount ordered to be paid. *See* 19–A M.R.S.A. § 2005. The party seeking to have the court deviate from the guidelines has the burden to overcome the presumption. *See* 19–A M.R.S.A. § 2007(1) (providing that the court may deviate from the guidelines if it finds that following them would be "inequitable" due to considerations found in section 2007(3)). Although the court considered Stephen's request that there be a deviation upward from the child support guidelines,[1] it concluded that any difference in the higher cost of living in England for Stephen was offset by the costs of visits between Maine and England, and used the guidelines to determine its $93.00 weekly support award. We cannot say that the court was compelled to deviate upward from the child support guidelines, or that Stephen rebutted, as a matter of law, the presumption that the guidelines reflect the proper amount of support. The court did make its child support award retroactive, but not fully retroactive to the date of the motion for child support. Retroactivity of a support award is within the broad discretion of the court. *See Finn v. Finn,* 517 A.2d 317, 319 (Me.1986).

[¶ 10] A decision to award costs is similarly reviewed for an abuse of discretion. *See Estate of Stowell,* 636 A.2d 440, 442 (Me.1994). The determinations made by the court with respect to the effective date of the child support that Julie was ordered to pay, and with respect to costs, did not result in a plain and unmistakable injustice, so apparent that it is instantly visible without argument. The court acted within the range of its considerable discretion.

## II. JURISDICTION OVER ARREARAGES OWED BY STEPHEN

[¶ 11] Stephen also contends that the English courts have exclusive jurisdiction with regard to child support arrearage, and that the Magistrates Court had conclusively relieved him of all arrearage with respect to the support of Allyson. The Department contends that the Magistrates Court's order has no bearing on the order of the Maine court for the period prior to the Magistrates Court's order.

[¶ 12] Under section 2903, a Maine court "issuing a support order ... has continuing, exclusive jurisdiction over a child support order ... [a]s long as this State remains the residence of the obligor, the individual obligee or the child for whose benefit the support order is issued." 19–A M.R.S.A. § 2903(1)(A) (1998). Stephen relies on a provision of the Uniform Interstate Family Support Act that provides that Maine "shall recognize the continuing, exclusive jurisdiction of a tribunal of another state [2] that has issued a child support order pursuant to a law substantially similar to this chapter." 19–A M.R.S.A. § 2903(4) (1998). A court "may not exercise its continuing jurisdiction to modify the order if the order has been modified by a tribunal of another state pursuant to a law substantially similar to this chapter." 19–A M.R.S.A. § 2903(2).

[¶ 13] Stephen misapprehends section 2903, subsection 4. Although that subsection requires that Maine recognize the jurisdiction of a court of another state, it does not mean that a Maine court loses its power to enforce a prior, valid order with regard to arrearage that accrued during

---

1. Julie argued that, in determining the amount of child support that she should pay toward the support of Allyson, the court should deviate downward from the guidelines.

2. "State" is defined to include a foreign jurisdiction with a similar law. *See* 19–A M.R.S.A. § 2802(19) (1998).

the period when the order was valid. Section 2903(3)(A) very clearly provides for such authority. Even after an order has been modified by a tribunal of another state, the court that issued the original order may enforce the order "as to amounts accruing before the modification." 19–A M .R.S.A. § 2903(3)(A). Here, Julie, the obligee spouse under the prior award for the support of Allyson, *see* 19–A M.R.S.A. § 2903(1)(A), remained a resident of Maine. The arrearage sought by the Department is for a period of time before Stephen's obligation was modified by the English courts. Accordingly, the jurisdictional statute is satisfied, and the Superior Court has jurisdiction with respect to the arrearage owed by Stephen.

[¶ 14] Finally, we find no error in the method used by the court to determine the arrearage, and Stephen has not demonstrated clear error in the court's factual conclusion that $7,662.61 is the amount of arrearage that Stephen owes.

The entry is:

Judgments affirmed.