2003 ME 63

**Ronald MAHAR et al.**

v.

**STONEWOOD TRANSPORT.**

Supreme Judicial Court of Maine.

Argued: Oct. 7, 2002.
Decided: May 1, 2003.

Paul W. Chaiken (orally), Anthony D. Pellegrini, Rudman & Winchell, LLC, Bangor, for plaintiffs.

Mary F. Kellogg (orally), Frederick J. Badger Jr., Richardson, Whitman, Large & Badger, Bangor, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

CLIFFORD, J.

[¶ 1] Ronald and Susan Mahar, individually and as parent and next friend of Kelsey Snowman, appeal from a summary judgment entered in the Superior Court (Penobscot County, *Mead, C.J.*) in favor of defendant StoneWood Transport. The Mahars' complaint, filed against Stone-Wood and Frederick J. Linfield, arose out of the actions of Linfield who, in December of 1998, assaulted and threatened the Mahars on Route 9 between Bangor and Aurora. The Mahars contend that summary judgment was improperly entered in favor of StoneWood on their claims alleging (1) that StoneWood negligently hired and supervised Linfield as an employee and/or as an independent contractor, and (2) that StoneWood is vicariously liable for the actions of Linfield as the employer or principal of Linfield. The Mahars contend that summary judgment was inappropriate because there are disputed issues of material fact, and also contend that the court improperly awarded costs to StoneWood. Finding no error, we affirm.

[¶ 2] StoneWood Transport, a division of StoneWood Investments, is a trucking company incorporated and managed in New Brunswick. Beginning in 1994, StoneWood periodically retained Linfield's services on a part-time basis. In 1996 and 1997, Linfield signed contracts with Stone-Wood to provide transportation services on essentially a full-time basis.

[¶ 3] On December 5, 1998, Linfield was driving east on Route 9 to McAdam, New Brunswick from Bangor. The Mahar fam-

ily was also traveling east on Route 9 after a shopping trip to Bangor. The Mahars approached Linfield's flatbed truck and drove behind him for several miles. At some point, Linfield turned on his rear-facing floodlights, which induced the Mahars to flash their headlights to show Linfield that their high beams were not on. This sequence of events repeated periodically until the vehicles reached Aurora and Linfield suddenly stopped his truck to block the road.

[¶ 4] Linfield exited his truck with a three to four foot long pipe, and approached the Mahars' car in a threatening manner while screaming obscenities and holding the pipe above his head like a baseball bat. The driver of another truck, behind the Mahars, began to yell at Linfield, who ran back to move his truck, thereby allowing the Mahars to continue traveling on Route 9. Linfield caught up to the Mahars, however, and followed them closely for approximately fifty miles until a local police officer pulled Linfield over.

[¶ 5] As a result of his conduct, Linfield was convicted of disorderly conduct (Class E), in violation of 17–A M.R.S.A. § 501 (1983 & Supp.2002); criminal threatening (Class D), in violation of 17–A M.R.S.A. § 209 (1983); and driving to endanger (Class E), in violation of 29–A M.R.S.A. § 2413(1) (1996). He was sentenced to a term of six months in prison, all but forty-five days suspended, and placed on probation for one year. Linfield's license to operate a vehicle in Maine was also suspended for 180 days. StoneWood terminated his services.

[¶ 6] The Mahars sued Linfield and StoneWood, alleging negligent infliction of emotional distress against Linfield, and seeking damages against StoneWood for the negligent hiring and supervision of an employee/independent contractor, and vicarious liability for Linfield's actions.

[¶ 7] The Mahars filed this appeal following the entry of a summary judgment by the Superior Court in favor of Stone-Wood on all of their claims against Stone-Wood, and the allowance by the Superior Court of StoneWood's bill of its costs.[1]

[¶ 8] On appeal from a summary judgment, we consider only the portions of the record referred to, and the material facts set forth, in the M.R. Civ. P. 56(h) statements to determine whether there was no genuine issue as to any material fact and that the successful party was entitled to judgment as a matter of law. *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653. We examine the facts in the light most favorable to the nonmoving party. *Johnson v. Carleton*, 2001 ME 12, ¶ 11, 765 A.2d 571, 575; *see Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21–22 ("Summary judgment is no longer an extreme remedy.... It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding.").

## I.

[¶ 9] The Mahars contend that the Superior Court erred in entering summary judgment for StoneWood because Stone-Wood had notice of Linfield's propensity for erratic behavior, based on prior complaints about Linfield's dangerous driving.[2]

---

1. The Superior Court entered judgment in favor of StoneWood pursuant to M.R. Civ. P. 54(b). The Mahars' claims against Linfield remained pending.

2. In 1995, StoneWood received a telephone call complaining about Linfield tailgating. In 1997, StoneWood received a letter complaining generally of Linfield's driving and, in 1998, a phone call complaining about Linfield speeding. Linfield, thereafter, also received a ticket for speeding in October of 1998. Although StoneWood's Employee

The Mahars argue that StoneWood's decision to allow Linfield to operate a flatbed following those complaints demonstrates StoneWood's failure to follow its own procedure and, from this failure, a trier of fact could find that StoneWood acted negligently in its supervision of Linfield. We disagree.

■ [¶ 10] We have not yet recognized the independent tort of negligent supervision of an employee. *See Napieralski v. Unity Church of Greater Portland,* 2002 ME 108, ¶¶ 6, 10, 802 A.2d 391, 392–93 (refusing to recognize tort of negligent supervision); *see also, e.g., Hinkley v. Penobscot Valley Hosp.,* 2002 ME 70, ¶ 16, 794 A.2d 643, 647 (avoiding recognition of negligent supervision and deciding case on other grounds); *Santoni v. Potter,* 222 F.Supp.2d 14, 28 (D.Me.2002) (observing "[t]he Maine Law Court has never recognized the tort of negligent supervision"); *Swanson v. Roman Catholic Bishop of Portland,* 1997 ME 63, ¶ 9, 692 A.2d 441, 443–44 (declining to recognize tort of negligent supervision).

■ [¶ 11] Even were we to adopt negligent supervision as an independent tort, as the Mahars urge, the facts of this case do not support such a cause of action. *See* RESTATEMENT (SECOND) OF TORTS § 317 (1965);[3] RESTATEMENT (SECOND) OF AGENCY § 213 (1958).[4] The prior actions of Linfield of which StoneWood was aware did not involve acts of violence, and would not support a finding that StoneWood should have foreseen Linfield's assault on the Mahars. Although the evidence might support a finding of foreseeability as to a minor traffic violation, Linfield misused the vehicle to threateningly follow the Mahars for fifty miles. Moreover, the Mahars' cause of action against StoneWood is based on the totality of Linfield's conduct, and the total damages resulting from that conduct. The Mahars have made no attempt to separate Linfield's threatening pursuit of the Mahars along Route 9 from the pipe assault that preceded it. *See generally Barter v. Boothbay/Boothbay Harbor Cmty. Sch. Dist.,* 564 A.2d 766, 768 (Me.1989) (noting "a plaintiff seeking legal relief must plead all theories of recovery then available to him") (citations omitted).

Manual provided that the receipt of two public complaints constituted grounds for dismissal, Linfield was only placed on probation for six months.

3. RESTATEMENT (SECOND) OF TORTS § 317 (1965) provides:

A master is under a duty to exercise reasonable care so to control his servant while acting outside the scope of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if:
(a) the servant
(i) is upon the premises in possession of the master or upon which the servant is privileged to enter only as his servant, or
(ii) is using a chattel of the master, and
(b) the master
(i) knows or has reason to know that he has the ability to control his servant, and

(ii) knows or should know of the necessity and opportunity for exercising such control.

4. RESTATEMENT (SECOND) OF AGENCY § 213 (1958) provides:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless;
(a) in giving improper or ambiguous orders or in failing to make proper regulations; or
(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;
(c) in the supervision of the activity; or
(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Accordingly, the court correctly entered summary judgment for StoneWood on the claim for negligent supervision.

## II.

[¶ 12] In contending that Stone-Wood should be held vicariously liable for Linfield's conduct, the Mahars challenge the Superior Court's findings that (1) Linfield worked as an independent contractor for StoneWood, rather than as an employee,[5] and (2) even if Linfield was an employee, his actions were outside the scope of his employment. Specifically, the Mahars fault the Superior Court for its failure to cite facts or law to support its decision, and argue that the issues of Linfield's poor driving habits and whether Linfield acted within the scope of his employment are for a jury to determine.

[¶ 13] Maine applies the RESTATEMENT (SECOND) OF AGENCY to determine the limits of imposing vicarious liability on an employer. *See McLain v. Training & Dev. Corp.,* 572 A.2d 494, 497 (Me.1990). Specifically, section 228 of the Restatement provides that a master may be vicariously liable for the actions of its agent when the agent's conduct was within the "scope of employment."

[¶ 14] The RESTATEMENT (SECOND) OF AGENCY § 228 provides:

(1) Conduct of a servant is within the scope of employment if, but only if:
  (a) it is of the kind he is employed to perform;
  (b) it occurs substantially within the authorized time and space limits;
  (c) it is actuated, at least in part, by a purpose to serve the master, and
  (d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.
(2) Conduct of a servant is not within the scope of employment if it s different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

A recent First Circuit opinion interpreting Maine's use of section 228 provides an instructive explanation:

[A]cts relating to work and done in the workplace during working hours are within the scope, *see* [Restatement (Second)] §§ 229, 233, 234; negligent performance of duties is within the scope, *see* [Restatement (Second)] §§ 232–233, while serious intentional wrongdoing is outside it, *see* [Restatement (Second)] § 231 & cmt. a.; and the motivation of the employee (to serve the master's interests or his own) is often an important element, *see* [Restatement (Second)] §§ 235–236.

5. The Superior Court termed Linfield an "independent contractor" rather than an "employee." Determining whether an individual worked as an "independent contractor" or as a formal "employee" for a particular employer is made pursuant to an eight-factor test, with "control" being the most important factor. *Murray's Case,* 130 Me. 181, 154 A. 352 (1931). The ability of StoneWood to (1) continuously assign work to Linfield; (2) approve, reject, or terminate any assistant Linfield hired; (3) require Linfield to check in on a regular basis; (4) require Linfield to follow their "Rules and Regulations" as provided by the Broker's Contract; (5) require Linfield to attend safety seminars; and (6) place Linfield on probation for violating their rules/regulations, demonstrate that StoneWood retained substantial control over Linfield's conduct. At the very least, there was a material issue of fact in dispute precluding a finding, for purposes of summary judgment, that Linfield was not an employee. The Superior Court's error in concluding as a matter of law that Linfield was not an employee is, however, harmless because Linfield was acting outside the scope of his employment when assaulting the Mahars.

*Lyons v. Brown,* 158 F.3d 605, 609–10 (1st Cir.1998); *see Nichols v. Land Transp. Corp.,* 103 F.Supp.2d. 25, 27 (D.Me.1999) ("[A]ctions that are done with a private, rather than a work-related, purpose to commit wrongdoing are outside of the scope of employment and render the motivation of the employee, in performing the act at issue a crucial, immunity-related fact."), *aff'd,* 223 F.3d 21 (1st Cir.2000).

■ [¶ 15] In further defining "scope of employment," subsection (2) of section 228 requires that the agent's conduct occur within "authorized time or space limits." RESTATEMENT (SECOND) OF AGENCY § 228 (1958). This requirement relates to whether the agent's act was foreseeable, and establishes the principle that "the master should not be held responsible for the agent's conduct when that conduct is outside the contours of the employment relationship." *Nichols,* 103 F.Supp.2d. at 27.

[¶ 16] In *Nichols,* a trucking company was sued for the stabbing of a motorist by one of its driver-employees. *Id.* Concluding that the stabbing was outside the scope of employment, the court observed that the employee was not authorized to leave his truck to stab a motorist, and doing so clearly demonstrated his motivation to serve his personal interests, rather than those of the trucking company. *Id.* at 27. Although Comment a to RESTATEMENT (SECOND) OF AGENCY § 231 (1958) recognizes that a master may reasonably anticipate a servant's minor crimes in the carrying out of the master's business, serious criminal activity, such as brandishing a knife and stabbing a motorist, are both unexpected and different from what is expected from servants in a lawful occupation. *Nichols,* 103 F.Supp.2d at 28.

[¶ 17] Assault against and threatening of a family is serious criminal conduct that is unanticipated and very different from con-duct that StoneWood would reasonably expect from Linfield. Contrary to the Mahars' contentions, Linfield's poor driving record, without more, did not render his actions against the Mahars foreseeable. Like the driver-employee in *Nichols,* Linfield was not authorized to leave his truck to assault the Mahars, nor was he authorized to follow up the assault by harassing them on the highway. Moreover, it is clear that Linfield's motive for assaulting and harassing the Mahars was unrelated to any interest of StoneWood. Linfield's actions against the Mahars were well outside the scope of his employment relationship with StoneWood.

### III.

■ [¶ 18] The Mahars also contend that the Superior Court erred in failing to address StoneWood's liability pursuant to section 219(2)(d) of the RESTATEMENT (SECOND) OF AGENCY because they allege that Linfield was aided in accomplishing the assault by the existence of his agency or employment relationship with StoneWood.

[¶ 19] Section 219(2)(d) provides that "[a] master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless ... (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation." RESTATEMENT (SECOND) OF AGENCY § 219(2)(d) (1958); *see McLain,* 572 A.2d at 498.

[¶ 20] Although we have discussed section 219(2)(d), *see id.,* we have not yet expressly adopted it. Section 219(2)(d), however, is not a broad enough extension of employer liability on which to base StoneWood's liability for Linfield's assaultive and threatening conduct in this case.

[¶ 21] Comment e to section 219(2)(d) acknowledges that the section is limited in its application to cases within the apparent authority of the employee, or when the employee's conduct involves misrepresentation or deceit. *See* RESTATEMENT (SECOND) OF AGENCY § 219(2) cmt. e (1958) ("Clause (d) includes primarily situations in which the principal's liability is based upon conduct which is within the apparent authority of a servant ... [which] may also be the basis of an action of deceit, and even physical harm."); *see also* Daniel M. Combs, Casenote, Costos v. Coconut Island Corp.: *Creating a Vicarious Liability Catchall Under the Aided–by–Agency–Relation Theory*, 73 U. COLO. L. REV. 1099, 1105 (2002) ("The limitations contained in comment e ... prevent the aided-by-agency-relation basis for liability from potentially swallowing agency law's general scope of employment rule."). Additionally, the deliberations preceding section 219(2)(d)'s adoption demonstrate an intent to limit the section's application to cases involving apparent authority, reliance, or deceit. Combs, *supra*, at 1107–11 (providing a detailed synopsis of the drafters' discussions while formulating section 219(2)(d)).

[¶ 22] The Mahars rely on language in *Costos v. Coconut Island Corp.*, 137 F.3d 46, 49 (1st Cir.1998) to argue for the application of section 219(2)(d) to the facts of this case. The *Costos* court found the defendant innkeeper liable for the actions of its employee who improperly entered the room of a female guest using a duplicate room key and sexually assaulted her.

137 F.3d at 50. The court held the employer liable for the agent's tort because it "was accomplished by an *instrumentality*, or through conduct associated with the agency status." *Id.* (emphasis added) (internal quotation omitted).

[¶ 23] The *Costos* decision has been the subject of some criticism.[6] In that case, the employee acted deceitfully by using his position as an employee to learn the room number of the female guest, and by misusing a duplicate key to enter her room. *Costos*, 137 F.3d at 47. In this case, however, Linfield did not purport to act on behalf of StoneWood, and he engaged in no misrepresentation or deceit; rather, he committed an assault and thereafter drove in a threatening manner.

[¶ 24] Although StoneWood assigned a driving route to Linfield and partially owned Linfield's truck,[7] neither Linfield's pipe assault against the Mahars, nor his threatening pursuit of them were related to StoneWood in any way. Moreover, the Mahars based their action against StoneWood on the *totality* of Linfield's conduct; their complaint does not distinguish Linfield's assault with the pipe from his subsequent pursuit. Accordingly, the Mahars have not demonstrated that Linfield's tortious conduct was aided by the existence of his relationship with StoneWood within the meaning of section 219(2)(d). *See Barter*, 564 A.2d at 768.

## IV.

[¶ 25] Finally, the Mahars contend that the Superior Court wrongly awarded

---

6. At least one critic notes that the First Circuit's "instrumentality" analysis does not delineate the scope of "instrumentality." Combs, *supra*, at 1112 ("By ignoring the properly narrow scope of aided-by-agency-relation liability, the *Costos* court eroded traditional principles of agency law."); *see Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 760, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)

("[I]n a sense, most workplace tortfeasors are aided in accomplishing their tortious objective by the employment relation: Proximity and regular contact afford a captive pool of potential victims.").

7. The truck was licensed and registered in the joint names of StoneWood and Linfield.

costs to StoneWood, arguing that such costs, including those incurred for depositions and medical records, are unreasonable under the circumstances.

▆ [¶ 26] We review a decision to award costs for an abuse of discretion. *Nicholson v. Nicholson*, 2000 ME 12, ¶ 10, 747 A.2d 588, 591. M.R. Civ. P. 54(d) authorizes costs to the prevailing party, and subsection (g) specifically allows for costs on depositions. M.R. Civ. P. 54(g) ("No costs shall be allowed unless the court finds that the taking of the deposition was reasonably necessary, whether or not the deposition was actually used at trial."). Title 14 M.R.S.A. § 1502–C (2003) also, under certain circumstances, provides for the allowance of other discretionary costs such as medical reports.

[¶ 27] The disputed costs for depositions and medical reports were reasonable given that the plaintiffs claimed that defendant Linfield caused negligent infliction of emotional distress and engaged in outrageous and malicious conduct for which they claimed StoneWood Transport was vicariously liable. The Superior Court acted within its discretion when granting StoneWood's bill of costs.

The entry is:

Judgments affirmed.

ALEXANDER, J., filed opinion concurring in part and dissenting in part, in which LEVY, J., joins.

ALEXANDER, J., with whom LEVY, J., joins, concurring and dissenting.

[¶ 28] I concur with that portion of the Court's opinion which concludes that there is no cause of action based on negligent supervision. I also concur with the Court's conclusion that there are sufficient disputes as to material facts to preclude a finding that Linfield was not an employee of StoneWood. With Linfield's employment relationship with StoneWood established for purposes of our analysis, I respectfully dissent from the Court's conclusion that there is no dispute as to material fact that StoneWood's driver was acting outside the scope of his employment while he was driving StoneWood's truck.

[¶ 29] The case is before us for review of a summary judgment. The Court correctly points out that, in such reviews, the evidence stated or referenced in the parties' statements of material facts must be construed most favorably to the party against whom summary judgment was granted. Court's opinion ¶ 8 (citing *Johnson v. Carleton*, 2001 ME 12, ¶ 11, 765 A.2d 571, 575). If any reasonable view of the evidence would create a dispute of fact as to whether, at the time of the incidents in question, Linfield was acting within the scope of his employment, then summary judgment must be denied.

[¶ 30] There is no dispute that the primary purpose of Linfield's employment was to drive a truck, that StoneWood partially owned, at times and on routes designated by StoneWood. There is also no dispute that at the time Linfield threatened and then pursued the Mahars, Linfield was driving the truck on StoneWood's business, on the route selected by StoneWood. We can hope that StoneWood does not want its drivers to operate their vehicles negligently or improperly in the course of driving their routes. But that desire for proper driving at all times does not render principals immune from liability for employees' acts of negligence or impropriety that occur in the scope of their employment. Negligent and improper acts do occur in the course of driving within the scope of a professional driver's employment.

[¶ 31] The Court acknowledges, as it must, that acts relating to work and done in the workplace during working hours, even if done negligently, are acts within the scope of employment. Court's opinion ¶¶ 13–14 (citing RESTATEMENT (SECOND) OF AGENCY §§ 229, 232–34 (1958); *Lyons v. Brown,* 158 F.3d 605, 609–10 (1st Cir. 1998)). The Court also cites to Comment a of the RESTATEMENT (SECOND) OF AGENCY § 231 indicating that an employer may reasonably anticipate, and thus be civilly liable for, an employee's minor crimes committed in carrying out the employer's business, but that the employer may not be viewed as expecting and thus may not be civilly liable for serious criminal activity such as brandishing a knife or stabbing a motorist. Court's opinion ¶ 16 (citing *Nichols v. Land Transp. Corp.,* 103 F.Supp.2d 25, 27–28 (D.Me.1999), *aff'd* 223 F.3d 21 (1st Cir.2000)). While the Court asserts otherwise, the crimes arising from Linfield's fifty-mile pursuit of the Mahars, Class E driving to endanger, 29–A M.R.S.A. § 2413(1), and Class D criminal threatening, 17–A M.R.S.A. § 209, certainly fall within the category of minor crimes addressed in the Restatement, crimes the employer could reasonably anticipate may occur in the course of employment.

[¶ 32] The RESTATEMENT (SECOND) OF AGENCY § 228 states:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

[¶ 33] The standards stated in subsection (2) are essentially the same as the standards stated in subsection (1). Subsection (2) states what must be proven to escape from a "within the scope of employment" determination, while subsection (1) states what must be proven to bring an employee's actions within the "scope of employment" definition.

[¶ 34] While the issue may be close, for purposes of this analysis, Linfield's initial stop and threats in Aurora are assumed to be outside the scope of his employment under subsection (2) of section 228. However, once Linfield resumed driving, his actions reverted to conduct within the scope of employment. There can be no dispute that Linfield's following the Mahars at perilously close distances for fifty miles on his assigned StoneWood route meets the criteria of subparagraph (a), (b) and (c) of the scope of employment definition in subsection (1) of section 228. StoneWood can prevail on summary judgment under subsection (1) only if it can establish, without dispute as to material fact, that Linfield's actions were "unexpectable." *See* RESTATEMENT (SECOND) OF AGENCY § 228(1)(d). The combination of Linfield's prior record and common driving practices prevent StoneWood from seriously contending that Linfield's actions were, without dispute, "unexpectable."

[¶ 35] Although the laws prohibit it, many drivers of cars and trucks drive too fast and some follow too close in the course of their driving for business or pleasure. When damages are caused by such violations of the rules of the road, employers are liable for the poor driving of their

employees in the course of their employment. The employer is not exempt from liability because they do not condone the employee's poor driving or because the employee may have committed some other more egregious tort, outside the scope of his employment, some miles back up the road.

[¶ 36] Turning to subsection (2) of section 228, there can be no dispute that Linfield's conduct, driving StoneWood's truck, was exactly the conduct for which he was employed. Further his conduct occurred within the time and on the route where StoneWood assigned Linfield to drive the truck. While driving the truck too fast or following another vehicle too closely might not have been "actuated by a purpose to serve the master," this limitation in subsection (2) must be qualified by the sections and comments of the Restatement cited by the Court. Those sections and comments recognize that both negligence and minor criminal acts committed in the course of a regular employment activity are within the scope of employment and can subject an employer to liability.

[¶ 37] The Mahars' burden here is not to prove conclusively that Linfield was acting within the scope of his employment. They only need to establish that there is a dispute of fact as to whether Linfield acted within the scope of his employment when he followed the Mahars closely for fifty miles on his assigned route. The Court characterizes Linfield's actions as "threatening pursuit" or "harassing them on the highway." Attaching such characterizations to Linfield's actions does not take his actions out of the scope of his employment any more than characterizing his actions as "negligent following" or "dangerous driving" would bring his actions within the scope of his employment. But the resort to characterizations of the facts of driving too fast and following too close demonstrates at least a dispute as to material facts that a jury, not opinion writers, must resolve.

[¶ 38] This is not a case where, as in *Nichols,* 103 F.Supp.2d at 28, a trucker stabbed a motorist. Here, Linfield's actions involved the type of minor crimes in carrying out the employer's business that *Nichols* indicates may be anticipated and may subject the employer to civil liability. 103 F.Supp.2d at 28. Nor is this a case like *Costos v. Coconut Island Corp.,* 137 F.3d 46 (1st Cir.1998), where a hotel employee, using a duplicate room key, entered the room of a female guest and sexually attacked her. 137 F.3d at 50. In *Costos,* the First Circuit determined, on those facts that the tortious acts occurred within the scope of employment.

[¶ 39] Here, the facts make an even stronger case for the determination that the conduct occurred within the scope of employment, because the relationship between the offending acts and the employment is much closer. The tortious acts occurred during the course of the exact activity, driving on a specific route, that was the principal activity of StoneWood's employment. If these tortious acts committed while driving are not within the scope of a truck driver's employment, then, perhaps, few tortious acts committed by a professional driver while driving would, in the Court's view, be acts within the scope of employment. The law that employers are responsible for the tortious acts by their employees committed while driving in the course of their employment has served us well in the past. It should continue. Because there is a dispute of material fact as to whether Linfield was acting within the scope of his employment when he pursued the Mahars, summary judgment should not have been granted.

[¶ 40] The Court's opinion indicates that even if liability were established for some of Linfield's activities, summary judgment would still be appropriate because the Mahars have failed to differentiate damages arising from activities for which there might be liability from the damages arising from activities for which there is no liability. Court's opinion ¶¶ 11 & 24. The Court appears to be saying that an employee's committing a first tortious act outside the scope of employment renders the employer immune from liability for subsequent tortious acts that may be within the scope of employment, unless the plaintiff assumes the burden of differentiating the damages attributable to those subsequent tortious acts.

[¶ 41] The Court's position that the plaintiff has the burden to differentiate damages for events for which there is liability from damages for events for which there is no liability, or forfeit their entire claim, changes the law. It is a significant departure from the law we have stated in cases such as *Lovely v. Allstate Ins. Co.*, 658 A.2d 1091 (Me.1995). In *Lovely*, we held that where it may be difficult or impossible to apportion damages between causes for which a defendant is responsible and causes for which a defendant is not responsible, the burden to differentiate and the risk of failure to differentiate damages for a single injury rests with the defendant. *Id.* at 1092–94.

[¶ 42] If we assume that StoneWood is not liable for damages arising from Linfield's initial stop and threats to the Mahars, this does not excuse StoneWood from responsibility for the subsequent continuing trauma to the Mahars which occurred after the Mahars and Linfield resumed their trips toward Calais. The great bulk of the damages likely arise from this terrifying one-hour ordeal on a dark highway, where StoneWood's truck followed the Mahars at perilously close distances until it was stopped by a law enforcement officer. These damages, arising after the trip resumed, are significant. The stop and threats may be considered aggravating factors for the subsequent damages, enhancing the Mahars' fears of what Stone-Wood's driver might do to them on the road to Calais. The fact that it might be difficult to rationally distinguish the damages arising from the initial contact from the much larger amount of damages arising from the subsequent trip, cannot justify denial of recovery for all damages, particularly at this summary judgment stage of the proceedings.

[¶ 43] At trial, the Mahars will have the burden of proving, by preponderance of the evidence, those damages that are proximately caused by the actions of Stone-Wood's employee within the scope of his employment. *Merriam v. Wanger*, 2000 ME 159, ¶¶ 8–10, 757 A.2d 778, 780–81; *Crowe v. Shaw*, 2000 ME 136, ¶ 10, 755 A.2d 509, 512. StoneWood is not excused from liability for all damages because some of Linfield's actions causing damages may have been outside the scope of his employment. Any risk of failure to differentiate damages rests with StoneWood. *See Lovely*, 658 A.2d at 1092–94.

[¶ 44] There are disputes of material fact as to whether Linfield was acting as an employee of StoneWood. There are disputes of material fact as to whether some or all of Linfield's actions were within the scope of StoneWood's employment. There are disputes as to material fact as to whether Linfield's actions, while acting within the scope of his employment, caused damages to the Mahars and as to what the proper amount of these damages might be. Accordingly, summary judgment should not have been granted.

[¶ 45] I would vacate the judgment in favor of StoneWood and remand for the trial of the facts of this case.