STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-19-250

PROGRESSIVE NORTHWESTERN INSURANCE CO.,

Plaintiff,

v.

ORDER

METROPOLITAN PROPERTY AND CASUALTY
INSURANCE CO.,

RECD CUMB CLERKS OFI
MAR 4 '21 AM 8:50

Defendant.

In this action plaintiff Progressive Northwestern Insurance Company is seeking a declaratory judgment that defendant Metropolitan Property and Casualty Insurance Company is required to contribute 50% of the $ 300,000 that Progressive paid in settlement of a claim against its insured. Before the court are the parties' cross-motions for summary judgment.

Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Mahar v. StoneWood Transport*, 2003 ME 63 ¶ 8, 823 A.2d 540. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant.

Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Kenny v. Department of Human Services*, 1999 ME 158 ¶ 3, 740 A.2d 560.

Undisputed Facts

In this case the material facts are undisputed and the case turns on an issue of law – the interpretation of language in a homeowner's insurance policy that Metropolitan issued to Vincent Micale Jr.

On June 18, 2017 Micale rented two jet skis from a watercraft rental company for use on Little Sebago Lake. The authorized operators of the jet skis as listed on the rental agreement were Monica Curtin and Adam Kelly. While on the water, Curtin and Kelly collided. Kelly sustained serious injuries which eventually resulted in the amputation of his left leg.

Progressive Northwestern Insurance Company had issued a Boat and Personal Watercraft policy to Micale that was effective when the accident occurred. Metropolitan Property and Casualty Insurance Company had issued a homeowner's policy to Micale that was also effective when the accident occurred.

The watercraft rental company filed a lawsuit in Cumberland County Superior Court, alleging that Micale had been negligent in his failure to instruct and/or warn Kelly regarding operation of the jet ski; Kelly filed a crossclaim against Micale for damages

2

arising from the collision.[1] The case was eventually settled on terms that included a $300,000 payment to Kelly from Micale.

Progressive ended up paying the $300,000 to Kelly on Micale's behalf. Its position throughout has been that Metropolitan is obligated to contribute half of that amount.[2] Whether that is true depends largely on whether Metropolitan's policy provides coverage. Specifically, the applicable provision of the Metropolitan policy initially states that the policy does not cover bodily injury or property damage arising out of use of watercraft owned or operated or rented to the policyholder, including negligent supervision of any person involving a watercraft.

It then goes on, however, to provide as follows:

> <u>Coverage is extended for bodily injury and property damage arising out of</u>:
> a. any watercraft on the insured premises;
> b. any watercraft while stored;
> c. watercraft, owned or furnished or available for your regular use:
>> 1) that is powered by one or more motors with 50 horsepower or less; or
>> 2) that is a sailing vessel 31 feet and under with or without auxiliary power;
> d. <u>rented watercraft</u>:
>> 1) powered by one or more outboard motors;
>> 2) <u>with an inboard or inboard-outdrive motor with 50</u>

---

[1] While that case was pending, Metropolitan sought a declaration that it did not owe Micale a duty to defend. The court (Mills, J.) ruled that Metropolitan did owe Micale a duty to defend. While Metropolitan relies on some of the language in the order by Justice Mills which supports its position, the court agrees with Progressive that Justice Mills was focusing on a different issue and her ruling has to be considered in that light.

[2] If Metropolitan is obligated to contribute to the settlement, there are two subsidiary disputes between the parties – (1) whether there needs to be a further proceeding to address Metropolitan's contention that the settlement amount was unreasonable and (2) whether Metropolitan's coverage would constitute co-primary coverage because under the circumstances of this case both policies provide that, if other insurance is available, their policies would be excess. Because of its ruling on the coverage issue, the court does not reach those issues.

3

> horsepower or less. This includes watercraft propelled
> by a water jet pump engine or motor; or
> 3) that is a sailing vessel 31 feet and under with or
> without auxiliary power; or
> e. watercraft not owned by you, not rented to you nor
> furnished or available for your regular use.

Metropolitan Policy at I-3 to I-4 (emphasis added).

It is undisputed that each of the jet skis rented to Micale, including the one on which Kelly was injured, was a rented watercraft "propelled by a water jet pump engine or motor." It is also undisputed that both jet ski engines had 125 horsepower.

Progressive has also offered unrebutted evidence, through the affidavit of its expert, David Smith, that there are no commercially available jet skis with 50 horsepower of less.[3] The only watercraft propelled by a water jet pump engine or motor is a jet propelled kayak.

Discussion

Metropolitan contends that, as relevant to this case, the provision in section d.2 of the watercraft provision quoted above unambiguously includes only coverage for rented watercraft with 50 horsepower or less and that the 50 horsepower limit also applies to watercraft propelled by a water jet pump engine. Accordingly, it argues that its coverage does not apply to the 125 horsepower jet skis rented in this case and Progressive is not entitled to contribution.

---

[3] Metropolitan objects that Smith's affidavit is not admissible because his basis was an internet search but the court concludes that as an expert, Smith is entitled to rely on hearsay and accepts Progressive's evidence on this issue.

4

Progressive contends that section d.2 in the Metropolitan policy, quoted above, is ambiguous, that ambiguous provisions are interpreted in favor of coverage, and that therefore Metropolitan's policy did provide coverage and requires Metropolitan to contribute one-half of the settlement amount.

Insurance policies are liberally construed in favor of an insured and any ambiguity in the contract is resolved against the insurer. *York Insurance Group v. Van Hall*, 1997 ME 230 ¶ 8, 704 A.2d 366. Policy language is ambiguous if it is reasonably susceptible of different interpretations. *Cambridge Mutual Fire Insurance Co. v. Vallee*, 687 A.2d 956, 957 (Me. 1996). "A policy is ambiguous if an ordinary person in the shoes of the insured would not understand that the policy did not cover claims such as those brought. Nevertheless, the court must interpret unambiguous language in a contract according to its plain and commonly accepted meaning." *Peerless Insurance Co. v. Brennon*, 564 A.2d 383, 384 (Me. 1989).

Determining whether or not a contract is ambiguous is a question of law. *American Protection Insurance Co. v. Acadia Insurance Co.*, 2003 ME 6 ¶ 11, 814 A.2d 989. Because Metropolitan is arguing against coverage, it has burden of persuasion.

Coverage in this case turns on the interpretation of section d.2. In response to Metropolitan's argument that the 50 horsepower limit applies in this case, Progressive argues that section d.2 is ambiguous because the words "this includes watercraft propelled by a water jet pump engine or motor" could apply back to "rented watercraft." However, the placement of that sentence in d.2 denotes that the reference to "watercraft propelled by a water jet pump engine" applies to the preceding sentence in d.2. Under the language in

5

the policy, the inclusion of watercraft propelled by water jet pump engines does not apply to rented watercraft generally but is instead applicable to watercraft "with an inboard or inboard-outdrive motor with 50 horsepower or less."

Progressive's second ambiguity argument is that the reference to 50 horsepower or less could be read to apply only to inboard-outdrive motors, as opposed to both inboard and inboard-outdrive motors. The problem with that argument is that "inboard" and "inboard-outdrive" both modify the word "motor" in section d.2.[4] As a result, both inboard and inboard-outdrive motors are subject to the 50 horsepower limit and the following sentence brings watercraft with water jet pump engines under that limit.

Progressive's final ambiguity argument is that "this" is ambiguous. However, given its placement in section d.2 "this" refers to the preceding words "with an inboard or inboard-outdrive motor with 50 horsepower or less."

There remains Progressive's point that because there are no jet skis with 50 horsepower or less, a reasonable person untrained in the law or the insurance field would not have understood that the 50 horsepower limitation was meant to apply to jet skis. Progressive Motion for Summary Judgment at 8, citing *Baybutt Construction Corp. v. Commercial Union Insurance Co.*, 455 A.2d 914, 921 (Me. 1983). The first answer to this argument is that it assumes that the average person would know that all jet skis have more than 50 horsepower and might therefore believe that jet skis would be covered despite the 50 horsepower limitation. The second answer to this argument is that, as Progressive

---

[4] Progressive's argument would have more force if the beginning of d.2 read: "with an inboard motor or inboard-outdrive motor with 50 horsepower or less." In that case, assuming that a jet ski has an inboard motor, Progressive could argue that the policy language could be interpreted to mean that there is no horsepower limit on rented watercraft with an inboard motor and the 50 horsepower limit only applies to watercraft with an inboard-outdrive motor.

6

concedes, there is at least one form of watercraft that has a water jet pump engine with less than 50 horsepower, so the extension of coverage to such watercraft is not an empty promise.

The court concludes that on the issue before the court the Metropolitan policy is not reasonably susceptible of different interpretations and that an ordinary person in the shoes of the insured would have understood that the 50 horsepower limitation applied to a watercraft with a water jet pump engine. [5]

Accordingly, Metropolitan is entitled to summary judgment dismissing Progressive's complaint.

The entry shall be:

The motion for summary judgment by plaintiff Progressive Northwestern Insurance Co. is denied. The cross-motion for summary judgment by defendant Metropolitan Property and Casualty Insurance Co. is granted and the complaint is dismissed. The clerk is directed to incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: March 3, 2021

Thomas D. Warren
Justice, Superior Court

**Plaintiff–Christopher Dinan, Esq.**
**Defendant–Jeffrey Edwards, Esq.**

Entered on the Docket: 03|04|21

---

[5] In this connection, it may be noted that the 50 horsepower limit in section d.2 is consistent with the 50 horsepower limit set forth immediately above in section c.1 .

7