STATE OF MAINE                                   SUPERIOR COURT
CUMBERLAND, ss                                   CIVIL ACTION
                                                 DOCKET NO. CV-19-359

COUNTRY MUTUAL INSURANCE
CO.,

        Plaintiff

v.                                               ORDER

DEAD RIVER CO.,                                  REC'D CUMB CLERKS OF
                                                 JUL 7 '22 PM1:48

        Defendant


In this action plaintiff Country Mutual Insurance Co., as subrogee of John and Sarah Dorsey, is seeking damages from defendant Dead River Co. for damage to the Dorseys' Cape Elizabeth home caused by a fire that occurred in 2015.

Before the court is Dead River's motion for summary judgment.


Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Mahar v. StoneWood Transport,* 2003 ME 63 ¶ 8, 823 A.2d 540. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment

**Plaintiff-David Dubord, Esq.**
**Defendant-Rosie Williams, Esq.**

as a matter of law, summary judgment should be granted. *Kenny v. Department of Human Services*, 1999 ME 158 ¶ 3, 740 A.2d 560.

In this case Country Mutual has asserted claims for negligence, breach of contract, breach of warranty and strict liability. In its opposition to summary judgment Country Mutual acknowledges that its strict liability claim should be dismissed. Moreover, its contract and warranty claims merge with its negligence claim to the extent that all of those claims depend on the contention that Dead River negligently performed its service contract with the Dorseys by failing to repair a propane line that Dead River had not installed.

Facts

The following facts are, unless noted, undisputed:

The Dorseys' residence had a propane tank enclosed by a fence in the backyard, approximately 50 feet from the back of the house. There was a first-stage regulator at the tank and propane lines leading from the first stage regulator to several second-stage regulators. One of the second-stage regulators provided propane to the Dorseys' boiler along a propane line that ran through copper piping approximately 17 feet along the back of the Dorseys' residence to an elbow joint. This is designated in Dead River's Statement of Material Facts (SMF) as the "Propane Line" and will be referred to with that title in this order. The Propane Line was mounted to the home by five plastic hangers approximately 12 inches off the ground. It was installed around the time the Dorsey residence was extensively remodeled in approximately 2001-02.

It is undisputed that Dead River did not install the Propane Line, did not mount the Propane Line on plastic hangers, did not own the Propane Line or the second-stage regulators, and did not perform any work on the Propane Line.

2

The Dorseys had a service contract with Dead River under which Dead River performed an annual tune-up of the Dorseys' boiler. It is not disputed that the annual tune-up involved brushing and vacuuming the system, checking the gas pressure, performing an efficiency test, checking for water leaks, and checking the various heating zones. Dead River SMF ¶ 33 (admitted). Dead River has offered evidence that the annual tune-ups did not involve any inspection or work on the exterior of the home unless requested by the homeowner. As discussed below, this is disputed by Country Mutual.

The last annual boiler tune-up performed by Dead River at the Dorsey Residence occurred on March 4, 2014. The fire at the Dorseys' residence occurred a year later on March 2, 2015. Subsequent investigation revealed that the weight of snow coming off the roof had stripped the Propane Line off the plastic hangers and pushed the Propane Line down to the ground, causing it to become disconnected at the elbow joint. This resulted in propane leaking into the crawl space of the residence, which eventually ignited to start the fire.

There is no evidence as to when the Propane Line became disconnected, but it is undisputed that it was still attached to the residence before the first snow in the winter of 2014-15. As noted above, Dead River's last annual tune-up occurred at the end of the prior winter.

Discussion

1. Dead River first argues that its service contract with the Dorseys expressly excluded propane flow and piping related to the outside storage of propane. Dead River SMF ¶ 28. Country Mutual objects that Dead River's reliance on its service contract is based on company records. Although these may be business records, they are not attached to the Townsend affidavit, and her recitation of what they contain is hearsay. In addition, even assuming that Dead River is correct as

3

to the service plan in question, it offers no evidence that the Dorseys were ever made aware of the exclusion in question.

2. Dead River argues that based on the undisputed facts Country Mutual has not shown that Dead River owed any contractual or other legal duty to the Dorseys with respect to the piping and Propane Line which Dead River neither installed nor owned.

3. In response, Country Mutual has submitted a statement by Mark McDonald, who Country Mutual had designated as an expert. In that statement McDonald offers the opinion, in summary, that Dead River had such a duty based on "Gas Check" guidelines issued by something called the Propane Education and Research Council, based on a provision of ASME B31.8, and particularly based on section 8 of NFPA 54. Country Mutual contends that while Dead River's propane delivery drivers did not have such a duty, the duty applied to the Dead River technicians who performed annual tune-ups. See Country Mutual Opposing SMF ¶ 68.

4. The first problem with McDonald's opinion is that it is contained in an unsworn affirmation. Rule 56(e) requires that opposition to summary judgment must be made by affidavits based on personal knowledge setting forth facts that would be admissible in evidence. The unsworn nature of McDonald's statement is a basis to disregard McDonald's opinions in their entirety.

5. Even overlooking the unsworn nature of McDonald's opinions, those opinions do not create a disputed issue for trial.

6. Dead River has offered evidence that it has not adopted the Gas Check guidelines. In response, Country Mutual refers to what it contends are "publicly available records" which, it contends, suggest that Dead River has "internally adopted" Gas Check guidelines as reasonable standards of care. Country Mutual Opposing SMF ¶ 67. Those documents (some apparently printed out from the Internet) are not authenticated and are inadmissible hearsay that do not meet the

4

requirement that opposition to a motion for summary judgment must set forth facts that would be admissible in evidence. Rule 56(e).[1]

7. McDonald's invocation of ASME B31.8 is similarly unavailing. Initially, neither McDonald nor Country Mutual explain or establish how ASME standards apply to Dead River technicians.[2] The section to which he cites refers to the installation of hangers supporting piping, and Dead River did not perform the installation.

8. More fundamentally, McDonald's opinion with respect to ASME B31.8 was never disclosed to Dead River during discovery. Expert opinions not properly disclosed during discovery may be disregarded at summary judgment. *Estate of Smith v. Salvesen*, 2016 ME 100 ¶ 15, 143 A.2d 780.

9. Similarly, the opinion McDonald now offers with respect to NFPA 54 – on which he places his primary reliance – was also not disclosed in discovery. NFPA 54 has been adopted in Maine, but Dead River points out that McDonald expressly stated at his deposition that he was deferring to another expert with respect to the application of the NFPA. *See* Dead River's Reply SMF objecting to ¶ 38 of Country Mutual's Opposing SMF.[3] McDonald's opinion relating to NFPA 54 is therefore disregarded.

10. Even if it were not unsworn and even if it had been disclosed in discovery, McDonald's opinion on NFPA 54 would not generate a disputed issue for trial because it incorrectly depends

---

[1] In addition, the Gas Check guidelines expressly state that they are not intended to set forth a general custom or practice in the industry or set forth a legal standard of care.

[2] Although McDonald refers to "ASME" without explaining what it means, the court understands that ASME is the American Society of Mechanical Engineers. Country Mutual has attached a copy of certain sections of ASME to its summary judgment opposition without authenticating them.

[3] If Country Mutual had a basis to argue that Dead River's objection was unfounded, it had an opportunity to file a response pursuant to Rule 56(i)(2). It did not do so.

on conflating "gas pressure checks" performed at the boiler during annual tune-ups with the more elaborate "pressure testing and inspection" procedure set forth in the NFPA — defined as "an operation performed to verify the gas tight integrity of gas piping following its installation and modification." *See* Dead River's Exhibits P and Q. A full-fledged "pressure testing and inspection" involves visual inspection of the piping system and states that "where leakage or other defects are located, the affected portions of the piping system shall be repaired or replaced." As defined, this procedure is to be performed "following . . . installation and modification" – not annually.

11. Country Mutual is not entitled to offer McDonald's unsworn and previously undisclosed opinion – that NFPA 54 required Dead River, in the course of conducting annual tune-ups, to visually inspect piping it did not install and that upon such a visual inspection plastic hangers should have been recognized as a defect that should have been repaired and replaced – to generate a disputed issue for trial.

12. Notably, McDonald does not offer the opinion that, if metal hangers had been used instead of plastic hangers, the detachment of the propane line would have been avoided. That is left to speculation. While a party opposing summary judgment is entitled to the benefit of any inferences that may be derived from the record, a party opposing summary judgment is not entitled to the benefit of unsupported speculation. *Waugh v. Genesis Healthcare LLC,* 2019 ME 179 ¶ 17, 222 A.3d 1063.

The entry shall be:

The motion by defendant Dead River Co. for summary judgment is granted, and the complaint is dismissed. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

6

Dated: July 6, 2022

Thomas D. Warren
Active Retired Justice, Superior Court

Entered on the Docket: 07/11/22
MC

7