2006 ME 120

**James SPENCER et al.**

v.

**V.I.P., INC. et al.**

Supreme Judicial Court of Maine.

Argued: April 11, 2006.
Decided: Oct. 25, 2006.

Stephen B. Wade (orally), James E. Belleau, Jennifer L. Thompson, Skelton, Taintor & Abbott, P.A., Auburn; Tracie L. Adamson, Sumner H. Lipman, Lipman, Katz & MacKee, P.A., Augusta, for plaintiffs.

Philip E. Johnson (orally), Johnson & Webbert, L.L.P., Augusta, for defendant V.I.P., Inc.; Wendell G. Large, Richardson, Whitman Large & Badger, Portland, for defendant Justin Laliberte.

Panel: SAUFLEY, C.J., and DANA, CALKINS, LEVY, and SILVER, JJ.

Majority: DANA, CALKINS, and SILVER, JJ.

Dissent: SAUFLEY, C.J., and LEVY, J.

DANA, J.

[¶ 1] James Spencer, individually and as the personal representative of Nancy Spencer's estate, and Brittany Spencer appeal from a summary judgment entered in the Superior Court (Oxford County, *Gorman, J.*) in favor of V.I.P., Inc. They con-

tend that the court erred in concluding that, when V.I.P. employee Justin Laliberte's vehicle collided with the Spencers' vehicle, Laliberte was not acting within the scope of his employment, and V.I.P., consequently, could not be held vicariously liable. Finding genuine issues of material fact as to whether Laliberte was acting within the scope of his employment, we vacate the summary judgment.

## I. BACKGROUND

[¶ 2] The following facts are undisputed. Laliberte, an hourly employee at V.I.P.'s Lewiston warehouse, volunteered to help set up for the 2002 Show, Shine & Drag, an annual promotional event sponsored by V.I.P. and held at the Oxford Plains Speedway, during which the public is invited to view cars, vendor products, and drag racing. Hourly employees who volunteered to help set up received $25 cash and a T-shirt.

[¶ 3] Pursuant to his commitment, Laliberte awoke at 4:30 A.M. on July 20, 2002, and drove to the Oxford Plains Speedway where he began setting up at 6:00 A.M. He completed his work in approximately one hour and then departed. While driving home, Laliberte's vehicle crossed into the on-coming lane and collided with the vehicle containing James, Nancy, and Brittany Spencer. As a result of the collision, Nancy was killed and James and Brittany were injured.

[¶ 4] James, individually and as the personal representative of Nancy's estate, and Brittany commenced this action against Laliberte and V.I.P., seeking damages for James's and Brittany's personal injuries and Nancy's suffering and wrongful death. V.I.P. moved for a summary judgment arguing that, inasmuch as Laliberte was not acting within the scope of his employment

at the time of the accident, V.I.P. could not be held vicariously liable. The court granted V.I.P.'s motion, and James and Brittany brought this appeal.

## II. DISCUSSION

[¶ 5] Summary judgment is appropriate when the parties' statements of material facts and the portions of the record referred to therein disclose no genuine issues of material fact and reveal that one party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c).

> We review the grant of a motion for summary judgment de novo. In our review, we consider the evidence and reasonable inferences that may be drawn from the evidence in the light most favorable to the party against whom the summary judgment has been granted in order to determine if the parties' statements of material facts and referenced record evidence reveal a genuine issue of material fact.

*Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178, 1179.

[¶ 6] In determining whether an employer is vicariously liable for the actions of an employee, Maine follows the RESTATEMENT (SECOND) OF AGENCY (1958) and holds an employer liable only if its employee's action occurred within the scope of employment. *Mahar v. StoneWood Transp.*, 2003 ME 63, ¶ 13, 823 A.2d 540, 544. Under RESTATEMENT (SECOND) OF AGENCY § 228(1) as it applies in the present case, an employee's action occurs within the scope of employment if "(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master." [1]

---

1. The RESTATEMENT (THIRD) OF AGENCY (2006) is now extant. At the time of the events at issue,

[¶ 7] To determine whether there is a genuine issue of material fact as to whether the travel to and from the Oxford Plains Speedway was within the scope of Laliberte's employment, we begin by considering whether the statements of material facts and referenced record evidence support a finding that the travel was part of a task Laliberte was employed to perform. James referenced testimony that the $25 received by hourly employees who helped set up was intended to cover any expenses, including gas.[2] James further referenced testimony that hourly employees who traveled more than two hours to help set up could, upon approval, receive mileage in addition to the $25 and that salaried employees could receive only mileage. Inasmuch as these references suggest that the $25 was intended, at least in part, as compensation, they support a finding that the travel was part of a task Laliberte was employed to perform.[3]

[¶ 8] We next consider whether the statements of material facts and referenced record evidence support a finding that the travel occurred substantially within the authorized time and space limits. Certain references indicating that the travel at issue occurred at the time reasonably expected—i.e., immediately before and after Laliberte completed his set-up work—support such a finding.

[¶ 9] We finally consider whether the statements of material facts and referenced record evidence support a finding that the travel was actuated, at least in part, by a purpose to serve V.I.P. Inasmuch as it was necessary in order to perform the set-up work, the travel might be found to have been actuated by a purpose to serve V.I.P. Because the statements of material facts and referenced record evidence reveal a genuine issue of material fact as to whether the travel was within the scope of Laliberte's employment, the summary judgment cannot stand.[4]

The entry is:

Summary judgment vacated. Remanded to the Superior Court for further proceedings consistent with this opinion.

SAUFLEY, C.J., dissenting, with whom, LEVY, J., joins.

[¶ 10] I must respectfully dissent. The decision of the court today may ultimately cause employers to become the insurer for all harm caused on the highways by their employees while driving to or from work. It also changes Maine law, and moves Maine out of step with tort law across the country. This extraordinary expansion of liability without limitations or guidance is unprecedented. I would affirm the judgment because the Superior Court correctly concluded, as a matter of law, that Justin Laliberte was not acting within the scope of his employment with V.I.P., Inc., at the time his car collided with the car of James, Nancy, and Brittany Spencer.

[¶ 11] I first note that the catastrophe that struck the Spencer family when Justin Laliberte lost control of his car cannot

the RESTATEMENT (SECOND) OF AGENCY (1958) was operative and relied on by this Court.

2. A supervisor stated: "The $25 was to cover any expenses they would have, whether it was gas on the way up, or they could use the money any way they wanted."

3. Because Laliberte was apparently compensated, we need not address his argument that V.I.P. could not legally accept his services as

a volunteer. *See* 26 M.R.S. §§ 661–672 (2005); 29 U.S.C.S. §§ 201–205 (1993 & Supp. 2006); 29 U.S.C.S. §§ 206–219 (1992 & Supp. 2006).

4. Because we vacate the summary judgment, we do not address Laliberte's argument that the court erred in deeming one of V.I.P.'s statements of material fact admitted.

be overstated. The death of a mother and injury to a father and his child cannot be treated as anything other than tragic. If Justin Laliberte was negligent, it is he who must be held responsible. However, to reach for other methods to compensate the family for their loss by making Laliberte's employer responsible for his nonwork-related driving will have profound consequences on the economics of employment. Such a shift in fiscal responsibility for the act of a single person who was not at work should be brought about by legislative action where the costs and risk assessment can be debated and discussed. To shift responsibility to the employers of the people driving on Maine roads through the sweep of the judicial pen moves the Court outside of its constitutional role. We should apply the law that exists today: a person who is going to or coming from work is responsible for his or her own actions.

[¶ 12] This result is dictated first of all by our precedent, which requires us to follow the principles of vicarious liability set forth in the RESTATEMENT (SECOND) OF AGENCY (1958). *See Mahar v. StoneWood Transp.*, 2003 ME 63, ¶ 13, 823 A.2d 540, 544; *see also McLain v. Training & Dev. Corp.*, 572 A.2d 494, 497–98 (Me.1990). The Court acknowledges the existence of the RESTATEMENT by quoting section 228(1)(a)-(c), which provides the relevant test for determining whether a servant's conduct is within the scope of employment. The Court's opinion, however, applies section 228 in a vacuum, without acknowledging that its rule "is given more content by ... subordinate rules, commentary and illustrations" within the RESTATEMENT, as well as "by case law and rules of thumb." *Lyons v. Brown*, 158 F.3d 605, 609 (1st Cir.1998) (applying Maine law).

[¶ 13] The RESTATEMENT commentary provides useful guidance. It notes that section 228 is governed by an important rule found in a previous section:

> As stated in Section 220, one is a servant only if, as to his physical conduct in the performance of the service, he is subject to the control or to the right to control of the master. Hence, there is no liability for the conduct of one who, although a servant in performing other service, is doing work as to which *there is no control or right to control by the master.*

RESTATEMENT (SECOND) OF AGENCY § 228 cmt. c (1958) (emphasis added).[5] This rule is central to the issue in this case. Equally important is the rule of section 228(1)(c) & (2), expanded upon by section 235, that conduct is not within the scope of employment if it is not actuated by a purpose to serve the master. The RESTATEMENT commentary explicitly applies these rules to the issue of employer liability for the torts of a commuting employee. *See id.* §§ 229 cmt. d, 233 cmt. c, illus. 3.[6]

---

**5.** A comment to another section follows up on this point:

> The employment exists only during the time when the servant is performing or should be performing the work which he is employed to do. It does not begin at the time when it is necessary for him to act in order to perform the required service. It begins only when the master has a right to direct the method by which the servant is to perform the work, and terminates when the master has no longer a right to control it.

RESTATEMENT (SECOND) OF AGENCY § 233 cmt. a (1958).

**6.** The rule regarding the servant's purpose dictates that there is no liability when a master provides a vehicle merely "for the purpose of assisting the employee to perform what is essentially his own job of getting to or from work." RESTATEMENT (SECOND) OF AGENCY § 229 cmt. d (1958). Similarly, there is no liability under the rule that requires the master's control in the following situation:

[¶ 14] These rules leave no doubt about the correct result in this case. When the collision with the Spencers occurred, Laliberte was driving home from Oxford Plains Speedway after performing work there for V.I.P. At the time Laliberte was driving home, V.I.P. had no control over, and no right to control, his conduct; it did not dictate what vehicle he drove, the route he took, his speed, or even whether he drove home at all. What Laliberte did that day after leaving the Show, Shine & Drag was of no concern to V.I.P. at all. He thus was not V.I.P.'s servant at the time of the accident. In addition, Laliberte's purpose after he left the speedway was entirely personal. It is undisputed that he intended to drive home, pick up his daughter, and take her to York's Wild Kingdom. He no longer had any purpose to serve V.I.P., and thus, even if he were a servant, he was not acting within the scope of his employment at the time of the accident. Under the principles of the Restatement, therefore, V.I.P. may not be held vicariously liable for any negligence by Laliberte.

[¶ 15] Although the Restatement alone is clear enough, the same result is also suggested by the case law. We have not addressed this specific issue before, but we are not the first appellate court to consider whether an employee driving to or from work is within the scope of employment for purposes of imposing vicarious liability on the employer. There are dozens, perhaps hundreds, of cases from across the country on point.

[¶ 16] Courts have universally acknowledged that, as a general rule, an employee is not within the scope of employment while commuting to and from work. *See, e.g., Logan v. Phillips*, 891 S.W.2d 542, 544 (Mo.Ct.App.1995); *Mosko v. Raytheon Co.*, 416 Mass. 395, 622 N.E.2d 1066, 1068 (1993); *Whitehead v. Variable Annuity Life Ins. Co.*, 801 P.2d 934, 935 (Utah 1989); *Balise v. Underwood*, 71 Wash.2d 331, 428 P.2d 573, 576–77 (1967); *see also Ware v. Doane*, 227 F.Supp.2d 169, 175 (D.Me.2002) (applying Maine law); *see generally* Christopher Vaeth, Annotation, *Employer's Liability for Negligence of Employee in Driving His or Her Own Automobile*, 27 A.L.R.5th 174 (1995 & Supp.2006). This rule is often called the "going and coming rule," *e.g., Kornton v. Conrad, Inc.*, 119 Nev. 123, 67 P.3d 316, 317 (2003), a name also used for the related rule in workers' compensation law,[7]

---

A, an assistant in a butcher shop, is asked by his master, P, to stop on his way home from work and leave some knives to be ground at a machine shop which is on A's usual route to his home. Unless P entrusts A with a vehicle over which it is understood that the master is to have control during such period, A, although an agent in arranging for the sharpening of the knives, is not a servant in going to or from the place of purchase.

*Id.* § 233 cmt. c, illus. 3 (1958).

7. Although it is tempting to import precedent from workers' compensation cases into discussions of tort liability, that temptation must be resisted. Like many other courts, we have addressed the related, but distinct, issue of when an injury incurred by an employee driving to or from work "arises out of" and is "in the course of" employment for workers' compensation purposes. *See Fournier v. Aetna, Inc.*, 2006 ME 71, ¶ 6, 899 A.2d 787, 789 (acknowledging the "well-established workers' compensation principle" known as the "going and coming rule"); *see also Boyce v. Potter*, 642 A.2d 1342, 1343 (Me.1994); *Westberry v. Town of Cape Elizabeth*, 492 A.2d 888, 890 (Me.1985); *Waycott v. Beneficial Corp.*, 400 A.2d 392, 394 (Me.1979); *Oliver v. Wyandotte Indus. Corp.*, 308 A.2d 860, 861 (Me. 1973). These precedents are not controlling here. As several courts have recognized, it is inappropriate to uncritically import the reasoning of workers' compensation cases into issues of vicarious tort liability. *See, e.g., Ahlstrom v. Salt Lake City Corp.*, 73 P.3d 315, 317 & n. 1 (Utah 2003); *Clickner v. City of Lowell*, 422 Mass. 539, 663 N.E.2d 852, 855 n. 4

*Fournier v. Aetna, Inc.,* 2006 ME 71, ¶ 6, 899 A.2d 787, 789. This rule is consistent with the RESTATEMENT because while commuting an employee ordinarily is not subject to his employer's control and does not act with a purpose to serve the employer. RESTATEMENT (SECOND) OF AGENCY §§ 220, 228(1)(c), 235 (1958).

[¶ 17] Most courts also recognize some exceptions to the going and coming rule, but there is substantial disagreement about the nature of the exceptions. In an insightful recent opinion, the New Jersey Supreme Court explained that

> *respondeat superior* has been held to apply to a situation involving commuting when: (1) the employee is engaged in a special errand or mission on the employer's behalf; (2) the employer requires the employee to drive his or her personal vehicle to work so that the vehicle may be used for work-related tasks; and (3) the employee is "on-call."
>
> Those so-called "dual-purpose" exceptions cover cases in which, at the time of the employee's negligence, he or she can be said to be serving an interest of the employer along with a personal interest. It makes sense that those exceptions to the going and coming rule exist. Unlike ordinary commut[ing] in which an employer really has no interest, *each of the noted exceptions involves some control over the employee's actions and a palpable benefit to be reaped by the employer,* thus squarely placing such conduct back into the vicarious liability construct of the Restatement.

*Carter v. Reynolds,* 175 N.J. 402, 815 A.2d 460, 467 (2003) (citations omitted) (emphasis added). The recognition of exceptions for dual-purpose conduct is consistent with an explicit RESTATEMENT rule. Restatement (Second) OF AGENCY § 236 (1958) ("Conduct may be within the scope of employment, although done in part to serve the purposes of the servant or of a third person.").

[¶ 18] Laliberte was not on call on the day of the accident, and V.I.P. did not require him to drive his car to Oxford so he could use it for work-related tasks. The Spencers contend, however, that Laliberte was on a special errand or mission for V.I.P. It appears that a few courts have formulated the special errand exception so broadly that it might possibly encompass the facts of this case. *See, e.g., Chevron, U.S.A., Inc. v. Lee,* 847 S.W.2d 354, 356 (Tex.App.1993) (holding that the employer could be liable when the employee was driving to a mandatory seminar on what was normally his day off, because his attendance at the seminar "was for the ultimate benefit of his employer").

[¶ 19] Most courts, however, have applied the special mission exception more narrowly. In many cases where courts have found the exception applicable, the employee's driving was a necessary part of the errand in a way that Laliberte's driving was not necessary to his work at the Show, Shine & Drag. *See, e.g., Jones v. Aldrich Co.,* 188 Ga.App. 581, 373 S.E.2d 649, 650–51 (1988) (finding a factual issue on vicarious liability when the employee was driving home after being directed to an errand at a job site during working hours); *Alsay–Pippin Corp. v. Lumert,*

---

(1996); *Luth v. Rogers & Babler Constr. Co.,* 507 P.2d 761, 764 (Alaska 1973). The workers' compensation standard of arising out of and in the course of employment is generally broader than the tort standard of scope of employment, because the two standards serve different purposes and effectuate different policies. *See Harless v. Nash,* 959 P.2d 27, 29 (Okla.Civ.Ct.App.1998); *Jones v. Aldrich Co.,* 188 Ga.App. 581, 373 S.E.2d 649, 651 (1988); *Flanders v. Hoy,* 230 Pa.Super. 322, 326 A.2d 492, 494 n. 4 (1974); *Lundberg v. State,* 25 N.Y.2d 467, 306 N.Y.S.2d 947, 255 N.E.2d 177, 180 (1969).

400 So.2d 834, 835 (Fla.Dist.Ct.App.1981) (finding a factual issue on vicarious liability when the employee was driving home after leaving work early to make a work-related pickup and delivery); *Burks v. Leap,* 413 S.W.2d 258, 266–68 (Mo.1967) (finding a factual issue on vicarious liability when the employee was driving home after normal working hours after making a delivery during work hours that took him out of his usual route home).

[¶ 20] On the other hand, courts have found the special mission exception inapplicable in cases where, as in this case, the employee was merely driving to or from work at an unusual location or on a day the employee would not normally have worked. In cases similar to the one at bar, many courts have found no employer liability. The Nevada Supreme Court concluded in 2003 that an employee who was required to report to different job sites was not on a special errand while driving to work at the job site assigned for that particular day. *See Kornton,* 67 P.3d at 317. Other courts have ruled similarly. *See, e.g., Dhanraj v. Potomac Elec. Power Co.,* 305 Md. 623, 506 A.2d 224, 226–28 (1986) (finding no vicarious liability, and declining to apply the special mission exception, when the employee was driving to a temporary work location for a training course); *Stapp Drilling Co. v. Roberts,* 471 S.W.2d 131, 133, 135–36 (Tex.Civ.App. 1971) (holding that the employee was not on a special mission while driving to a job site, at a supervisor's request, on a day when work had originally been cancelled due to bad weather). At least one court has gone further and declined to recognize any exception for special missions because under the RESTATEMENT a commuting employee is acting within the scope of employment only if the employer has control over the method or route of the employee's travel. *DeRuyter v. Wis. Elec. Power Co.,* 200 Wis.2d 349, 546 N.W.2d 534, 537, 540–

42 (Ct.App.1996), *aff'd by an equally divided court,* 211 Wis.2d 169, 565 N.W.2d 118 (1997).

[¶ 21] Although we need not reach as far as the Wisconsin Court, in my view, the RESTATEMENT's principles of vicarious liability do not comport with the more expansive approach to the special mission exception. Exceptions to the going and coming rule should be recognized only in cases where some unique aspect of the employee's travel is within the control of, or for the benefit of, the employer. In the absence of facts asserting those fundamental aspects of vicarious liability, liability may be imposed on any driver's employer without adhering to the foundational principles of tort liability and in a random, unpredictable, and arbitrary fashion.

[¶ 22] The concepts in the RESTATEMENT accepted previously by this Court compel the conclusion that Laliberte was not acting in the scope of his employment at the time of the accident because he was not subject to V.I.P.'s control and was not acting with a purpose to serve V.I.P. He thus was not within the special mission exception as correctly understood, and the trial court correctly ruled that V.I.P. should not be liable for his allegedly tortious acts.

[¶ 23] The Court's failure to recognize the general going and coming rule, let alone attempt to define any exceptions to the rule in a way that is consistent with the RESTATEMENT or our own jurisprudence, is likely to result in an unprecedented expansion in vicarious liability. As we reiterated recently in *Mahar v. Stone-Wood Transport,* an employer should not be held responsible for its employee's "conduct when that conduct is outside the contours of the employment relationship." 2003 ME 63, ¶ 15, 823 A.2d at 545 (quotation marks omitted). Laliberte was done

with work for the day. He was not acting on behalf of his employer, and his allegedly negligent conduct was outside of the contours of any employment relationship with V.I.P.

[¶ 24] I would affirm the summary judgment of the Superior Court.