STATE OF MAINE                                    SUPERIOR COURT
CUMBERLAND, ss.                                   CIVIL ACTION
                                                  DOCKET NO: CV-09-248

FRANCIS, DONNA and
MEGHAN LATANOWICH

               Plaintiffs,
                                                  **ORDER**
        v.

MICHAEL A. BRYANT, PRIME
CUT MEAT MARKET, INC., and
THE COMMERCE INSURANCE
COMPANY,

               Defendants

       Plaintiffs Francis, Donna, and Meghan Latanowich have brought suit

against defendants Michael A. Bryant, Prime Cut Meat Market, Inc., and the

Commerce Insurance Company in connection with an altercation between Mr.

Bryant and Mr. Latanowich in the summer of 2007. Prime Cut Meat Market, Inc.,

moves for summary judgment on the plaintiffs' respondeat superior claim. The

plaintiffs oppose the motion, and request leave to supplement their existing

opposition with new, recently discovered facts. These facts are immaterial to the

legal issues currently before the court and allowing the plaintiffs to supplement

their opposition would be futile. As such, their motion to supplement is denied

and Prime Cut's motion for summary judgment is granted.

                            **BACKGROUND**

       Prime Cut Meat Market, Inc., is a Maine corporation that was formed in

2007. (Pl.'s Compl. ¶ 4; Opp. S.M.F. ¶ 2.) Michael A. Bryant invested between

$40,000 and $50,000 in the corporation at its inception and co-owns the business

with Laurie Pelletier. (Opp. S.M.F. ¶¶ 2–4.) Prime Cut had four employees,

1

including Mr. Bryant and Ms. Pelletier. (Opp. S.M.F. ¶ 7.) Ms. Pelletier would pay Mr. Bryant an hourly wage for his work. (Opp. S.M.F. ¶¶ 6, 11.) Mr. Bryant used his personal truck for business purposes and it was decorated with Prime Cut's logo. (Opp. S.M.F. ¶¶ 9–13.) Mr. Bryant also had a key to Prime Cut's storefront. (Opp. S.M.F. ¶ 14.)

In 2007, Mr. Bryant spent Labor Day weekend with his son and some friends at the Kokotosi Campground. (Supp. S.M.F. ¶ 6.) On Monday, September 3, he and his son left the campground in his truck with his personal trailer in tow. (Supp. S.M.F. ¶ 7.) Mr. Bryant took a detour on his way home to stop at Prime Cut's storefront. (Opp. S.M.F. ¶¶ 18, 21.) The store was not open that day, and he wanted to see that it was secure and verify that the coolers were operating properly. (Opp. S.M.F. ¶ 19.) He may also have expected to meet with Ms. Pelletier regarding Prime Cut's business. (Pl.'s M. to Suppl. at 2.)

As Mr. Bryant was driving from the campground on a two-lane road, Francis Latanowich came up behind him and passed the truck and trailer. (Supp. S.M.F. ¶ 11; Exh. A, Bryant Depo. at 65–66.) Mr. Bryant testifies that Mr. Latanowich passed him illegally at a curve and caused an oncoming vehicle to go off the road, while Mr. Latanowich claims that he passed legally and did not endanger any other drivers. (Exh. A, Bryant Depo. at 65–70.) The parties came to a stoplight and Mr. Bryant exited his vehicle to confront Mr. Latanowich. (Supp. S.M.F. ¶ 11.) A physical altercation ensued, which both parties claim the other started. (Supp. S.M.F. ¶ 1–2.)

Approximately fifteen years before the incident with Mr. Latanowich, Mr. Bryant had been convicted of assault in connection with a barroom brawl and served forty-eight hours. (Opp. S.M.F. ¶ 23; Exh. A, Bryant Depo. at 85–86.) Mr.

2

Bryant had also been involved in a confrontation with police stemming from a dispute with his former wife. (Opp. S.M.F. ¶ 24.)

On April 30, 2009, Mr. Latanowich, together with his wife and daughter, filed a complaint against Mr. Bryant alleging assault and battery, false imprisonment, negligence, and both intentional and negligent infliction of emotional distress. The complaint also named Prime Cut as a defendant under the theory of respondeat superior, alleging that Mr. Bryant was acting within the scope and course of his employment during the incident. Prime Cut seeks summary judgment in its favor.

## DISCUSSION

### 1. Plaintiffs' Motion to Supplement Their Opposition to Defendant's Motion for Summary Judgment

The plaintiffs seek to add additional statements of fact to their opposition. These facts stem from Mr. Bryant's answers to an interrogatory propounded by Prime Cut. It appears that Mr. Bryant exchanged multiple phone calls with Ms. Pelletier and her brother, Dana Pelletier, on September 3, 2007. This allegedly "further supports the notion that [Mr.] Bryant was traveling on the particular route and at the particular time on his way from the Kokatosi Campground on Septemer 3, 2007 . . . in order to conduct Prime Cut business." (Pl.'s M. to Suppl. at 2–3.) These alleged facts are duplicative. Prime Cut has already admitted that Mr. Bryant was driving to Prime Cut's storefront for business purposes at the time of the accident. (See Opp. S.M.F. ¶¶ 15-19, 21–22.) Furthermore, they are immaterial to the resolution of the motion for summary judgment as discussed below. The plaintiffs' motion to supplement is denied.

3

## 2.    Defendant Prime Cut's Motion for Summary Judgment

Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, 770 A.2d 653, 655. Any ambiguities "must be resolved in favor of the non-moving party." *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 2, 796 A.2d 683, 685 (citing *Green v. Cessna Aircraft Co.*, 673 A.2d 216, 218 (Me. 1996)). Here the parties agree to disagree about who started the fight, so for the purpose of this motion the court will assume that Mr. Bryant threw the first punch.

Mr. Latanowich claims there is a material dispute of fact as to whether Mr. Bryant was acting within the scope of his employment during the incident because he was traveling to Prime Cut's storefront for a commercial purpose. Prime Cut contends that Mr. Bryant's alleged intentional torts fall outside the scope of his employment as a matter law and it should thus be dismissed from this action. Maine has adopted the Second Restatement of Agency's test to determine whether an employer should be held vicariously liable for the actions of an employee. *Spencer v. V.I.P., Inc.*, 2006 ME 120, ¶ 6, 910 A.2d 366, 367. An employer will only be liable for the employee's torts if they occur "within the scope of employment." *Id.* (citing *Mahar v. StoneWood Transp.*, 2003 ME 63, ¶ 13, 823 A.2d 540, 544). An employee's action occurs within the scope of employment if:

> (a)  it is of the kind he is employed to perform;
> (b)  it occurs substantially within the authorized time and space limits;
> (c)  it is actuated, at least in part, by a purpose to serve the master, and
> (d)  if force is intentionally used by the servant against another, the use of force is not unexpectable by the master.

> (2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228 (1958).

Mr. Latanowich builds his argument almost exclusively around *Spencer v. V.I.P., Inc.*, a case in which an employee negligently collided with another vehicle while driving home from a work-related event. 2006 ME 120, ¶¶ 2–3, 910 A.2d at 367. The employee in *Spencer* had volunteered to help set-up a promotional event at a location other than his usual place of employment in exchange for $25 and a T-shirt. *Id.* The trial court found that he was acting outside the scope of his employment when driving home as a matter of law and granted summary judgment for the employer. *Id.* ¶ 4, 910 A.2d at 367.

On appeal the Law Court ignored the widely accepted "going-and-coming" rule and vacated the trial court's decision.[1] *Id.* ¶ 9, 910 A.2d at 368; *Spencer*, 2006 ME 120, ¶ 6, 23, 910 A.2d at 367, 372–73 (Saufley, C.J., dissenting); *see* Christopher Vaeth, Annotation, *Employer's Liability for Negligence of Employee in Driving His or Her Own Automobile*, 27 A.L.R.5th 174, * 3 (1995 & Supp. 2007). The Court found that there was a material dispute of fact about whether the employee was acting in the scope of his employment because he received compensation for attending the event, the travel to and from the event occurred at times the employer would reasonably expect, and the employee was traveling at least in part to serve the employer. *Spencer*, 2006 ME 120, ¶¶ 7–9, 910 A.2d at 368.

---

[1] The "going-and-coming" rule holds that employees are generally not acting "within the scope of employment while commuting to and from work." *Spencer*, 2006 ME 120, ¶ 16, 910 A.2d at 370 (Saufley, C.J., dissenting). This general rule is rife with exceptions. *See* Vaeth, *supra*, at * 4.

5

Mr. Latanowich analogizes the present facts to those in *Spencer*. At the time of the incident Mr. Bryant was traveling to Prime Cut's storefront for a business-related purpose. While there is no evidence to indicate that Prime Cut anticipated that Mr. Bryant would be traveling to the storefront at that time, the nature of Mr. Bryant's duties may have made such trips foreseeable. Following *Spencer*'s indication that travel to and from a workplace can generally be considered within the scope of employment, there is a question of fact as to whether Mr. Bryant's travel at the time of the incident was within the scope of his duties as an employee. Prime Cut concedes as much.

This does not end the inquiry. Unlike *Spencer*, this case involves alleged intentional misconduct rather than mere negligence. In *Spencer* the question was whether the employee's negligent travel was within the scope of his employment. Here, the question is whether Mr. Bryant was acting within the scope of his employment when he exited his vehicle and assaulted Mr. Latanowich. *See Mahar*, 2003 ME 63, ¶ 17, 823 A.2d at 545 (analyzing a truck driver's assault against and threatening of a family as the relevant actions giving rise to liability, rather than the actual travel itself); *Mahar*, 2003 ME 63, ¶ 34, 823 A.2d at 548 (Alexander, J., dissenting) (criticizing majority for not analyzing truck driver's tailgating of family as separate from the assault, but agreeing that the truck driver acted outside his employment when he exited his vehicle to threaten a family with a pipe); *Nichols v. Land Transport Corp.*, 103 F. Supp. 2d 25, 26–27 (analyzing the stabbing that occurred outside the truck rather than the tailgating that occurred while driving).

An employee's tortious or criminal conduct is not necessarily precluded from falling within the scope of employment. *See Mahar*, 2003 ME 63, ¶ 16, 823

6

A.2d at 545. Indeed, certain occupations explicitly contemplate that such activity will occur. Classic examples are employees in the business of repossessing goods, or those serving as bouncers at taverns. Restatement (Second) of Agency § 245 cmt. a (1958). The nature of the employees' duties in these situations makes personal contact and conflict foreseeable, even likely. In these cases the employer's liability "depends fundamentally upon the likelihood of a battery or other tort in view of the kind of result to be accomplished, the customs of the enterprise and the nature of the persons normally employed for doing the work." *Id.* At its core, this relates to the foreseeability of the tortious conduct and "the principle that 'the master should not be held responsible for the agent's conduct when that conduct is outside the contours of the employment relationship.'" *Mahar*, 2003 ME 63, ¶ 15, 823 A.2d at 545 (quoting *Nichols*, 103 F. Supp. 2d at 27); *see* Restatement (Second) of Agency § 245 cmt. c (1958) ("To create liability for a battery by a servant upon a third person, the employment must be one which is likely to bring the servant into conflict with others.").

An employee's intent is also an important element determining whether the employee's acts fall within the scope of the employment relationship. *Mahar*, 2003 ME 63, ¶ 14, 823 A.2d at 544 (citing Restatement (Second) of Agency §§ 235–36). If an employee partially intends to serve his employer through the commission of a tort or crime, but also acts out of personal satisfaction, his mixed motives will not immunize the employer from liability for the wrongful conduct. Restatement (Second) of Agency §§ 228(1)(c), 245 cmt. f (1958). However, "actions that are done with a private, rather than a work-related, purpose to commit wrongdoing are outside of the scope of employment and render the motivation of the employee, in performing the act at issue a crucial, immunity-

7

related fact." *Nichols*, 103 F. Supp. 2d at 27 (quoting *Bergeron v. Henderson*, 47 F. Supp 2d 61, 65–66 (D. Me. 1999) (*cited with approval by Mahar*, 2003 ME 63, ¶ 14, 823 A.2d at 545). "The fact that the servant acts in an outrageous manner or inflicts a punishment out of all proportion to the necessities of his master's business is evidence indicating that the servant has departed from the scope of employment in performing the act." Restatement (Second) Agency § 245 cmt. f (1958).

Working from these principles, Maine courts have twice found that truck drivers who exit their vehicle and engage in "road-rage" related violence were acting outside the scope of their employment as a matter of law. In *Nichols v. Land Transport Corp.*, an employee truck driver was driving his tractor-trailer rig on Route 9 toward Brewer, Maine. 103 F. Supp. at 26. The employee "tried several times to pass [the plaintiff] in no-passing zones." *Id.* The plaintiff, also a truck driver, made obscene gestures at the employee, who subsequently tailgated the plaintiff for several miles. *Id.* When the trucks stopped at a traffic light, the employee exited the cab of his truck and the plaintiff did the same. *Id.* The plaintiff attacked the employee with a rubber-coated chain, and in the ensuing scuffle the employee stabbed the plaintiff with a knife. *Id.* The plaintiff later tried to hold the employer, Land Transport Corp., liable under the theory of respondeat superior. *Id.*

The federal district court found that the employee left "the physical space in which he was authorized to be as an agent for Land Transport" when he left the cab of his truck. *Id.* at 27. This willful exit from the authorized space of his employment was also clear evidence that the employee "was motivated to serve his personal interests, rather than those of Land Transport." *Id.* Finally, the act of

8

"brandishing a knife and stabbing" the plaintiff constituted a serious crime unrelated to the purposes of the employment. *Id.* The employee's "'clearly inappropriate or unforeseeable conduct' motivated by his personal animus toward" the plaintiff was "an abnormal and unexpected occurrence for which" the employer was not responsible. *Id.*

The case of *Mahar v. StoneWood Transport* also involved a roadside altercation on Route 9 near Brewer, Maine. 2003 ME 63, ¶ 3, 823 A.2d at 541–42. The plaintiffs were a family who came up behind StoneWood's employee truck driver on the road. *Id.* The employee began to turn "on his rear-facing floodlights, which induced the [plaintiffs] to flash their headlights to show [the employee] that their high beams were not on." *Id.* After some time, the employee "suddenly stopped his truck to block the road . . . exited his truck with a three to four foot long pipe, and approached the [plaintiffs'] car in a threatening manner while screaming obscenities and holding the pipe above his head like a baseball bat." *Id.* ¶¶ 3–4, 823 A.2d at 542. The employee only stopped and got back in his truck because another truck driver began to yell. *Id.* ¶ 4, 823 A.2d at 542. The plaintiffs passed the truck, but the employee caught up "and followed them closely for approximately fifty miles until a local police officer pulled [the employee] over." *Id.*

The trial court granted StoneWood summary judgment on the plaintiffs' vicarious liability claim. *Id.* ¶ 1, 823 A.2d at 541. On appeal, the Law Court analogized the case to *Nichols* and affirmed. *See id.* ¶¶ 16–17, 823 A.2d at 545. The Court found that "[a]ssault against and threatening of a family is serious criminal conduct that is unanticipated and very different from conduct that StoneWood would reasonably expect from" an employee truck driver, notwithstanding the

9

employee's prior history of poor driving. *Id.* ¶ 17, 823 A.2d at 545. The employee was neither "authorized to leave his truck to assault the [plaintiffs], nor was he authorized to follow up the assault by harassing them on the highway." *Id.* This conduct also made it "clear that [the employee's] motive for assaulting and harassing the [plaintiffs] was unrelated to any interest of StoneWood." *Id.* His actions "were well outside the scope of his employment" and summary judgment in StoneWood's favor was appropriate.[2] *Id.*

In this case, the plaintiffs passed Mr. Bryant as he was driving a truck emblazoned with Prime Cut's logo to the Prime Cut storefront. Mr. Latanowich alleges that this so enraged Mr. Bryant that he left his truck at the next stop light, approached the Latanowiches' car, and began to strike Mr. Latanowich repeatedly. (Pl.'s Compl. at 2.) This alleged assault was so violent and outrageous that it caused serious injury to Mr. Latanowich and allegedly caused Mr. Latanowich's wife and daughter serious emotional distress. (Pl.'s Compl. at 5–7.)

Accepting the plaintiffs' version of events as true, Mr. Bryant's assault against Mr. Latanowich and the threat this posed to the Latanowich family constitutes "serious criminal conduct that is unanticipated and very different from conduct that [Prime Cut] would reasonably expect" from Mr. Bryant. *Mahar*, 2003 ME 63, ¶ 17, 823 A.2d at 545. Mr. Bryant transports meat and assists in the operation of Prime Cut's store. While his duties undoubtedly include driving his truck and interacting with the public at the store, there is no indication that his job ever requires him to leave his vehicle on the highway,

---

[2] *Mahar v. StoneWood Transport* has since been enshrined in the Third Restatement of Agency as an illustration of behavior that necessarily falls outside the scope of employment. Restatement (Third) of Agency § 7.07 cmt. c, illus. 8–9 (2006).

approach a random vehicle, and assault the motorist within. *See id.* (driver not authorized to leave truck, assault family, or harass them on highway).

Like the driver in *Nichols*, when Mr. Bryant left his truck he exited the sphere of his employer's interests. *See Nichols*, 103 F. Supp. at 27 (employee not authorized to leave truck and evinced personal motivations by doing so). The assault was wholly foreign to any kind of action he was employed to perform, and in no conceivable way served Prime Cut's interests. Nothing about Mr. Bryant's employment required him to come into conflict with the public or anticipated that violence might occur. Indeed, the alleged outrageousness of the conduct evinces that Mr. Bryant was acting out of entirely personal motivations and had no intent to serve Prime Cut when he approached the Latanowiches' automobile. Even accounting for Mr. Bryant's admittedly checkered past, Prime Cut could not have foreseen that Mr. Bryant would give vent to his "road rage" as he allegedly did. Under the circumstances, Mr. Bryant acted "well outside the scope of his employment relationship" with Prime Cut, freeing it of responsibility for his conduct. *Mahar*, 2003 ME 63, ¶ 17, 823 A.2d at 545.

Despite all this, the plaintiffs contend that Prime Cut should still be vicariously liable for Mr. Bryant's actions because he was an investor in and part owner of the corporation. The Latanowiches argue that Mr. Bryant's ownership stake in Prime Cut made him "his own master," able to authorize his own conduct. They claim that when Mr. Bryant exited his truck, Prime Cut implicitly authorized him, through the person of Mr. Bryant, to assault Mr. Latanowich on Prime Cut's behalf. By this logic, Prime Cut gave Mr. Bryant actual authority to terrorize the Latanowich family in the corporate name.

11

A corporation is an independent legal entity that exists apart from its constituent shareholders, directors, officers, and employees. *See* 13-C M.R.S.A. § 302 (2009). Mr. Bryant could not have authorized himself to act in Prime Cut's name through any power as a shareholder or director because he did not have time to execute the requisite formalities between the moment he stopped his truck and the moment he began striking Mr. Latanowich. *See* 13-C M.R.S.A. §§ 701, 704, 821–22 (2009) (enumerating formalities for shareholder and director action with or without meetings). The only role in which Mr. Bryant could conceivably have authorized his actions on Prime Cut's behalf is that of an officer.

There is no evidence that Mr. Bryant actually held such a position in Prime Cut's corporate structure. However, if Mr. Bryant was a corporate officer he would fundamentally be an employee or agent of Prime Cut. *Advanced Construction Corp. v. Pilecki*, 2006 ME 84, ¶ 16, 901 A.2d 189, 196; 18B Am Jur 2d Corporations § 1316. Consistent with the ordinary principles of agency discussed above, his authority as an officer would be "limited to acts within the ordinary course of its business and within the scope of [his] authority and [would] not include acts performed solely for his . . . own pleasure or benefit." 18B Am Jur 2d Corporations § 1316.

The facts of this case make it clear that Mr. Bryant's actions fall outside the scope of Prime Cut's business and Mr. Bryant's employment. Perhaps more importantly, Mr. Bryant was wholly motivated by personal considerations when he attacked Mr. Latanowich. Even if Mr. Bryant was an officer of Prime Cut, the facts leave no doubt that he acted in his private capacity. The plaintiffs have not

12

alleged any alternative basis on which to premise Prime Cut's liability, so Prime Cut's motion for summary judgment is granted.

**The entry is:**

The plaintiffs' motion to supplement their opposition is denied. Prime Cut's motion for summary judgment in its favor on the plaintiffs' Count IX is granted.

DATE: _May 13, 2010_

Roland A. Cole
Justice, Superior Court

FRANCIS LATANOWICH ET ALS VS MICHAEL A BRYANT ET ALS
UTN:AOCSsr  -2009-0046088                    CASE #:PORSC-CV-2009-00248

-----------------------------------------------------------------------------

04 0000006821            ROBERTS, CATHY
    THREE CANAL PLAZA PO BOX 4630 PORTLAND ME 04112-4630
    F       THE COMMERCE INSURANCE COMPANY        DEF      RTND     05/26/2009

05 0000008898            VEILLEUX, JOHN R
    415 CONGRESS STREET PO BOX 4600 PORTLAND ME 04112-4600
    F       MEGHAN LATANOWICH                     PL       RTND     04/30/2009
    F       FRANCIS LATANOWICH                    PL       RTND     04/30/2009
    F       DONNA LATANOWICH                      PL       RTND     04/30/2009

FRANCIS LATANOWICH ET ALS VS MICHAEL A BRYANT ET ALS

UTN:AOCSsr  -2009-0046088                    CASE #:PORSC-CV-2009-00248

---------------------------------------------------------------------

| 01 | 0000007422 | GERMANI, ELIZABETH | | | |
|---|---|---|---|---|---|
| | 43 DEERING STREET PORTLAND ME 04101 | | | | |
| F | PRIME CUT MEAT MARKET INC | | DEF | RTND | 05/21/2009 |
| | | | | W/DRWN | 06/15/2009 |

| 02 | 0000008092 | HILL, TRACY | | | |
|---|---|---|---|---|---|
| | 43 DEERING STREET PORTLAND ME 04101 | | | | |
| F | PRIME CUT MEAT MARKET INC | | DEF | RTND | 06/15/2009 |

| 03 | 0000003402 | LARKINS, NELSON | | | |
|---|---|---|---|---|---|
| | ONE CITY CENTER PO BOX 9546 PORTLAND ME 04112-9546 | | | | |
| F | MICHAEL A BRYANT | | DEF | RTND | 07/31/2009 |

*More Attorneys*