STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. CV-10-359
*NM - Cum - 7/11/2011*

THE TRAVELERS
INDEMNITY COMPANY,

        Plaintiff

v.

MICHAEL BRYANT,
et al.,

        Defendants

ORDER ON PLAINTIFF'S
MOTION FOR
SUMMARY JUDGMENT

**STATE OF MAINE**
Cumberland, ss, Clerk's Office

JUL 1 1 2011

**RECEIVED**

Before the court is the plaintiff The Travelers Indemnity Company's motion for summary judgment on its complaint for declaratory judgment. The plaintiff argues that it has no duty indemnify defendant Michael A. Bryant. For the following reasons, the motion is granted.

BACKGROUND

According to the statements of fact and the amended complaint in the underlying action,[1] on or about September 3, 2007, defendants Bryant and the Lantanowiches were traveling on Route 85 near Raymond, Maine. (Pl.'s S.M.F. ¶ 7; Am. Compl. ¶ 6.) At a traffic light, defendant Bryant exited his truck and approached the driver's side of the vehicle driven by defendant Francis Lantanowich. (Pl.'s S.M.F. ¶ 8.) Defendant Francis Lantanowich's wife, defendant Donna Lantanowich, was a passenger. (Id.) Defendant Bryant allegedly struck defendant Francis Lantanowich

---

[1] Francis and Donna Latanowich v. Michael Bryant, Prime Cut Meat Market, Inc., and the Commerce Insurance Company, Cum-CV-09-248. (Dunitz Aff. Ex. A.)

1

repeatedly in the head and chest. (Pl.'s S.M.F. ¶ 17; Am. Compl. ¶ 9.)[2] Additionally, defendant Bryant allegedly prevented defendant Francis Lantanowich from exiting his vehicle while striking him. (Pl.'s S.M.F. ¶ 18; Am. Compl. ¶ 10.) When defendant Francis Lantanowich was able to exit the vehicle, defendant Bryant allegedly continued to punch defendant Francis Lantanowich in the head and body. (Pl.'s S.M.F. ¶ 19; Am. Compl. ¶ 11.) When defendant Bryant exited his vehicle, he was taking "it upon [himself] to try to set [defendant Francis Lantanowich] straight." (Pl.'s S.M.F. ¶ 15; Bryant Dep. 76:3-8.) Defendant Bryant also "wanted [defendant Francis Lantanowich] to know that" defendant Francis Lantanowich had put another car in a ditch and caused defendant Bryant to swerve and that defendant Francis Lantanowich did not care that he had done so. (Pl.'s S.M.F. ¶ 16; Bryant Dep. 76-15-17.)

Defendant Bryant was an investor at Prime Cut Meat Market, Inc., helped as needed as an employee, and used his truck to advertise the business and also complete work activities for the business. (Defs.' S. Add'l M.F. ¶ 12.) At the time of the incident, defendant Bryant's truck had a Meat Market logo emblazoned on the sides with decals, although he was towing his personal camper. (Defs.' S. Add'l M.F. ¶¶ 8, 17; Pl.'s Rep. S.M.F. ¶ 17; Bryant Dep. 60:18-24.) Defendant Bryant paid for the decals himself. (Pl.'s Rep. S.M.F. ¶ 8.)

Defendant Bryant owned the truck he was driving, which he purchased with a loan, and the truck was registered in his name. (Pl.'s S.M.F. ¶ 9, *as qualified by* Defs.' Opp. S.M.F. ¶ 9.) Defendant Bryant bought the truck in 2006, before he became involved with Prime Cut. (Pl.'s S.M.F. ¶ 10.) Soon after, defendant Bryant had

---

[2] The Lantanowich defendants deny paragraphs 17-19 of the plaintiff's statement of material facts because the plaintiff cites to incorrect paragraphs of the Lantanowich defendants' own amended complaint in the underlying action. (See Defs.' Opp. S.M.F. ¶¶ 17-19.)

commercial plates put on the truck,[3] and later he used the truck for Prime Cut's business. (Defs.' Opp. S.M.F. ¶ 12; Defs.' S. Add'l M.F. ¶ 9.) Defendant Bryant used the truck to transfer meat to and from Prime Cut and the Windham Butcher. (Defs.' Opp. S.M.F. ¶ 12; Defs.' S. Add'l M.F. ¶ 10; Pl.'s Rep. S.M.F. ¶¶ 9-10.) Defendant Bryant used the truck at least partially for commercial purposes related to Prime Cut's business. (Defs.' Opp. S.M.F. ¶ 12; Defs.' S. Add'l M.F. ¶ 11.) Defendant Bryant testified that he used the truck for "anything and everything." (Pl.'s Rep. S.M.F. ¶ 11; Bryant Dep. 28:11-13.)

On the date of the incident, defendant Bryant was returning from a Labor Day weekend camping trip at Kokatosi Campground with his son. (Pl.'s S.M.F. ¶¶ 13-14.) Defendant Bryan left Kokatosi Campground at or around 10:00 or 11:00 a.m. and was headed to Prime Cut to check on the store. (Defs.' Opp. S.M.F. ¶¶ 12-13; Defs.' S. Add'l M.F. ¶ 13.) If defendant Bryant did not have an ownership interest in Prime Cut, he would not have gone to the store. (Defs.' S. Add'l M.F. ¶ 14.) Defendant Bryant intended to go to Prime Cut to inspect the walk-in cooler, freezer, and meat cases and then head home. (Defs.' S. Add'l M.F. ¶¶ 15, 16.) Laurie Pelletier, Prime Cut's majority owner, was not expecting defendant Bryant to inspect the store. (Pl.'s Rep. S.M.F. ¶¶ 13, 15.)

After the incident, defendant Bryant continued on his way to Prime Cut. (Defs.' S. Add'l M.F. ¶¶ 18-19, *as qualified by* Pl.'s Rep. S.M.F. ¶¶ 18-19.) Previous to this incident, defendant Bryant was convicted for a fight he was involved in at a bar. (Defs.' S. Add'l M.F. ¶ 20.) Laurie Pelletier testified that defendant Bryant also had a standoff with the police prior to September 2007, but that she never saw him lose his temper and

---

[3] Defendant Bryant testified that he was required to put commercial plates on his truck because of its size. (Pl.'s Rep. S.M.F. ¶ 9; Bryant Dep. 29:22-30:6.)

3

that she was unaware of any problem with road rage. (Defs.' S. Add'l M.F. ¶ 21, *as qualified by* Pl.'s Rep. S.M.F. ¶ 21; Pelletier Dep. 47:22-50:3.) On the day of the incident, defendant Bryant exchanged several telephone calls with Laurie Pelletier and a Mr. Dana Pelletier. (Defs.' S. Add'l M.F. ¶ 22.)

The plaintiff issued a Store Pac Custom Insurance Policy (hereinafter the "Policy") to Prime Cut Meat Market, Inc. with Policy No. I-68901371L366-IND-07. (Pl.'s S.M.F. ¶ 1; Pl.'s Ex. 1.A.) The Business Owners Coverage Part Declarations to the Policy states that the Form of Business is a Partnership. (Pl.'s S.M.F. ¶ 2.) Pursuant to the Policy, if the business is designated as a partnership, it is an insured. (Pl.'s S.M.F. ¶ 3.) The partnership's members, partners, and their spouses also are insureds, "but only with respect to the conduct of [the] business." (Pl.'s S.M.F. ¶ 3, *as qualified by* Defs.' Opp. S.M.F. ¶ 3; Policy § II.1.b.)

Laurie Pelletier testified that Prime Cut was an S corporation, but was converted into a Limited Liability Company after defendant Bryant resigned. (Pl.'s S.M.F. ¶ 4; see also Defs.' S. Add'l M.F. ¶ 4.) Pursuant to the Policy, if the business is designated something

> other than a partnership, joint venture or limited liability company, [it is] an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

(Pl.'s S.M.F. ¶ 5, *as qualified by* Defs.' S.M.F. ¶ 5; Policy § II.1.d.) Also insured under the Policy are

> Your "volunteer workers" only while performing duties related to the conduct of your business, or your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business.

4

(Pl.'s S.M.F. ¶ 6, *as qualified by* Defs.' Opp. S.M.F. ¶ 6; Policy § II.2.a (emphasis added).)

Defendant Bryant was one of the owners of Prime Cut and has been the owner since Prime Cut opened in 2007. (Defs.' S. Add'l M.F. ¶ 2.) Sometime before September 2007, defendant Bryant invested between $45,000 and $50,000 of his own money into Prime Cut for the initial start up of the corporation. (Defs.' S. Add'l M.F. ¶ 3.) Laurie Pelletier, paid defendant Bryant an hourly rate for his work at Prime Cut. (Defs.' S. Add'l M.F. ¶ 5.)[4] Defendant Bryant and Laurie Pelletier have been friends for years. (Defs.' S. Add'l M.F. ¶ 6.) Defendant Bryant possessed a Mechanic Savings Bank debit card with both his name and Prime Cut's name on the card. (Defs.' S.M.F. ¶ 7.) Defendant Bryant never used the card nor did he sign the card. (Pl.'s Rep. S.M.F. ¶ 7.)

By order dated May 13, 2010, the trial court in the underlying action dismissed all claims against Prime Cut and found that "Defendant Bryant's actions fell outside the scope of Prime Cut's business and Defendant Bryant's employment." Lantanowich v. Bryant, et al., 2010 Me. Super. LEXIS 56, at *18 (Me. Super. May 13, 2010) (Cole, J.); (Pl.'s S.M.F. ¶ 21.) The court also stated: "Perhaps more importantly, Defendant Bryant was wholly motivated by personal considerations when he attacked Mr. Lantanowich. Even if Defendant Bryant was an officer of Prime Cut, the facts leave no doubt that he acted in his private capacity." Id. at *18-19.[5] The court first determined that "there is a question of fact as to whether Mr. Bryant's travel at the time of the incident was within the scope of his duties as an employee" of Prime Cut. Id. at *8. The court relied on the

---

[4] There is no evidence that defendant Bryant was paid hourly for his work on September 3, 2007. (Pl.'s Rep. S.M.F. ¶ 5.)

[5] As the court further noted, the Lantanowich defendants, the plaintiffs in the underlying action, did not alleged an alternative basis on which Prime Cut could also be held liable for defendant Bryant's actions. Id. at *19.

5

rule, set forth in Spencer v. V.I.P., Inc., that travel to and from work could be within the scope of employment if "'(a) it is of the kind he is employed to perform; (b) it occurs substantially within the authorized time and space limits; [and] (c) it is actuated, at least in part, by a purpose to serve the master.'" 2006 ME 120, ¶ 6, 910 A.2d 366, 367 (quoting Restatement (Second) of Agency § 228(1)).[6]

On November 22, 2010, a Stipulation of Partial Dismissal was submitted by the Lantanowich defendants, dismissing Commerce Insurance Company, the Lantanowich defendants' uninsured/underinsured motorist insurer with prejudice and without costs in the underlying action. (Defs.' S. Add'l M.F. ¶ 23.) The underlying action was finally dismissed as of January 5, 2011. (Pl.'s S.M.F. ¶ 22.) The Lantanowich defendants allege that on March 8, 2011, they filed a Motion to Enforce Settlement and Stipulated Judgment against defendant Bryant in the underlying matter. (Defs.' s. Add'l M.F. ¶ 24.) They do not allege they filed a motion to set aside the final judgment; the appeal period has expired. (Pl.'s Rep. S.M.F. ¶ 24.)

---

[6] The Restatement (Second) of Agency has been replaced by the Restatement (Third) of Agency. The Restatement (Third) of Agency states:

> (1) An employer is subject to vicarious liability for a tort committed by its employee acting within the scope of employment.
>
> (2) An employee acts within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control. An employee's act is not within the scope of employment when it occurs within an independent course of conduct not intended by the employee to serve any purpose of the employer.
>
> (3) For purposes of this section,
>
>> (a) an employee is an agent whose principal controls or has the right to control the manner and means of the agent's performance of work, and
>>
>> (b) the fact that work is performed gratuitously does not relieve a principal of liability.

Restatement (Third) of Agency § 7.07.

The plaintiff filed this complaint with the court and seek a declaratory judgment that defendant Bryant is not an insured under the Policy and, accordingly, that the plaintiff has no duty to indemnify him in the underlying action. (Compl. ¶¶ 22-25.) The plaintiff now moves for summary judgment and argues that it has no duty to indemnify defendant Bryant.

DISCUSSION

I.    Standard of Review

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. M.R. Civ. P. 56(c). In considering a motion for summary judgment, the court should consider the facts in the light most favorable to the non-moving party, and the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. See, e.g., Johnson v. McNeil, 2002 ME 99, ¶ 8, 800 A.2d 702, 704. A contested fact is "material" if it could potentially affect the outcome of the suit under the governing law. Inkel v. Livingston, 2005 ME 42, ¶ 4, 869 A.2d 745, 747. A fact is "genuine" if there is sufficient evidence supporting the claimed fact to require a fact-finder to choose between competing versions of facts at trial. Id. For the purposes of summary judgment, factual disputes and ambiguities must be resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. Rodrigue v. Rodrigue, 1997 ME 99, ¶ 8, 694 A.2d 924, 926.

7

## II.    Duty to Indemnify

Generally,

> a court may not decide whether an insurer has a duty to indemnify until
> liability has been determined in a tort claim: "To secure the just, speedy
> and inexpensive determination of an action involving a duty to defend
> and a duty to indemnify and avoid a duplication of trials requires that
> courts proceed in the following order: the determination of a duty to
> defend, then the determination of liability in the underlying action, and
> finally the determination of the duty to indemnify."

State Farm Mut. Auto. Ins. Co. v. Koshy, 2010 ME 44, ¶ 62, 995 A.2d 651, 670. (quoting

Penney v. Capitol City Transfer, Inc., 1998 ME 44, ¶ 5, 707 A.2d 387, 389). There are

exceptions to this rule when '"the coverage dispute depends entirely on the relationship

between the insurer and the insured, not on facts to be determined in the underlying

litigation."' State Farm Mut. Auto. Ins. Co., 2010 ME 44, ¶ 63, 995 A.2d at 670 (quoting

Patrons Oxford Mut. Ins. Co. v. Garcia, 1998 ME 38, ¶ 7, 707 A.2d 384, 386 (footnotes

omitted)).    The plaintiff claims that whether it has a duty to indemnify defendant

Bryant for his alleged actions in the underlying case depends solely on the relationship

between the parties.[7]

---

[7] In the first part of their memorandum, the Lantanowich defendants focus on whether the
plaintiff has a duty to defend defendant Bryant in the underlying claim. (Defs.' Mem. at 5-8,
10.) Although the plaintiff states in its memorandum that "the defense afforded to Mr. Bryant
was subject to a reservation of rights based upon various coverage defenses," the issue is not
addressed in the parties' statements of fact. (Pl.'s Mem. at 1.)

The relevance of the defendants' argument is unclear because this motion for summary
judgment involves the plaintiff's duty to indemnify defendant Bryant.    Additionally, the
Lantanowich defendants allege that the plaintiff "blurred the lines between the separateness of
defense and indemnity though its actions in the underlying matter," but fails to support these
allegations. (Defs.' Mem. at 6.)   The Lantanowich defendants rely on Foremost Ins. Co. v.
Levesque, for their argument that an insurer cannot provide a defense in the underlying
litigation and, at the same time, file a motion for declaratory judgment against its insured. 2007
ME 96, ¶ 11, 926 A.2d 1185, 1188. Foremost considered whether to award attorneys' fees to the
insured and is not, as the Lantanowich defendants imply, a bar to the plaintiff's actions in this
case. See id. ¶¶ 5, 12, 926 A.2d at 1187, 1188-89.

8

The plaintiff asserts that defendant Bryant was not acting within the scope of his employment and not acting in his capacity as an owner or officer of Prime Cut when he caused defendant Francis Lantanowich's injuries.[8] In Maine, an employer can be held vicariously liable for an employee if the employee commits tortious acts within the scope of employment. Restatement (Third) of Agency § 7.07; Spencer v. V.I.P., Inc., 2006 ME 120, ¶ 6 n. 1, 910 A.2d 366, 367 n. 1 (recognizing the Restatement (Third) of Agency). Alternatively, a principal is liable for the conduct of an agent acting under the principal's apparent authority. Gniadek v. Camp Sunshine at Sebago Lake, Inc., 2011 ME 11, ¶ 34, 11 A.3d 308, 317 (quoting Restatement (Third) of Agency § 7.08). Under either theory of liability, the employer-principal is only liable for the assaultive or threatening conduct of the employee-agent who is serving a purpose of the employer-principal. Mahar v. StoneWood Transp., 2003 ME 63, ¶ 17, 823 A.2d 540, 545; Restatement (Third) of Agency §§ 7.07(2), 7.08. The defendants have failed to raise a genuine issue of material fact regarding whether defendant Bryant was acting for the benefit of Prime Cut when he assaulted defendant Francis Lantanowich.

The Lantanowich defendants, however, assert that whether defendant Bryant is insured under the Policy is different than the vicarious liability standard applied in the underlying case. (Defs.' Mem. at 10.) The Lantanowich defendants urge this court to apply a less stringent standard than applied under Maine law. The Lantanowich defendants assert that, if Prime Cut is a partnership under the Policy, the inquiry is whether defendant Bryant's actions related to the conduct of his business. (Defs.' Mem. at 11; Policy § II.1.b.) If Prime Cut is corporation, the inquiry is whether defendant Bryant was either performing his duties as an officer or director, acting within the scope

_____

[8] The plaintiff also contends that the Lantanowich defendants are collaterally estopped from claiming that defendant Bryant was acting within the scope of his employment because that issue was already raised and decided in the underlying case. (Pl.'s Mem. at 7-9.)

9

of his employment of Prime Cut, or performing duties related to the conduct of Prime Cut. (Defs.' Mem. at 11; Policy § II.2.a.)

Under the Policy language, defendant Bryant would be covered only if his actions were related to his business. The court in the underlying case found that there was at least a dispute of fact as to whether defendant Bryant's travel was within the scope of his employment at Prime Cut. Lantanowich, 2010 Me. Super. LEXIS 56 at * 8. The Lantanowich defendants rely the facts that defendant Bryant was traveling to Prime Cut with a Meat Market symbol on the side of his truck, which he used for Prime Cut business. (Defs.' S. Add'l M.F. ¶¶ 13-19.) Contrary to the Lantanowich defendants' claims, however, defendant Bryant's assaultive conduct under these circumstances was not for the purpose of Prime Cut's business, even if he was on his way to Prime Cut when the incident happened. See, e.g., Mahar, 2003 ME 63, ¶ 14, 823 A.2d at 544 ("serious intentional wrongdoing" is clearly outside the scope of employment).

The entry is

> The Plaintiff's Motion for Summary Judgment is GRANTED. Defendant Michael Bryant is not an insured under the Plaintiff's Policy and the Plaintiff has no duty to indemnify him in the underlying action.

Date: July 11, 2011

Nancy Mills
Justice, Superior Court

10

| Date Filed | Action | Answer Due Date: | Docket No. |
|---|---|---|---|
| 07-23-10 | DECLARATORY JUDGMENT | | CV-10-359 |

| Scheduling Order Issued: 8.13.10 | Discovery Deadline: Y.13.11 | Jury ☒ Fee Pd. ☒ Non-Jury ☐ | Statement Filed: 4.28-11  Order to File Statement: | Length of Trial: 1 day | Rule 16(b) ☐ Rule 16(c) ☐ | Pre Trial Issued: |

**Plaintiff(s)**

report 12-23-10 ✓
Statement 4.28.11

THE TRAVELERS INDEMNITY COMPANY

**Defendant(s)**

defaulted 3.24.11

MICHAEL A BRYANT — served 7.15.10
✓FRANCIS LATANOWICH
✓DONNA LATANOWICH

mediation w/ C (Wing) 12.6.10

vs.

**Plaintiff's Attorney(s)**

LAURENCE H LEAVITT ESQ
JONATHAN M DUNITZ ESQ

**Defendant's Attorney(s)**

John Veilleux, Esq (F+D Latanowich)

| Date | Justice | Action and Comments | Est Time | Not Reached | Cont |
|---|---|---|---|---|---|
| 10.12.10 | | ADR notice | | | |
| 12.20.10 | JM | ADR report unresolved | | | |